January Term, 1861.

BLAKESLEY v. JOHNSON.

## BLAKESLEY vs. JOHNSON.

Where the parties to a suit pending before a justice, made an agreement for a settlement on Sunday, by which the plaintiff received a certain amount in full and agreed to discontinue the suit; and the defendant relying on such agreement failed to appear any further, and the plaintiff prosecuted the suit and obtained an unjust judgment against the defendant, of which he had no knowledge until after the time to appeal had expired: *Held,* that equity would perpetually restrain the collection of such judgment, notwithstanding the agreement for a settlement might be void at law, by reason of being made on Sunday.

The right to relief did not depend on the legal validity of the agreement, but upon the question whether it had been relied on by the one party, and made use of by the other to obtain an unjust judgment.

The offer to return the articles received on such agreement for a settlement, after the judgment was obtained and the time for appealing had expired, does not affect the right to relief.

The assignees of a judgment take it subject to the equities between the parties.

APPEAL from the Circuit Court for *Sauk* County.

The case is stated in the opinion of this court. The circuit court rendered judgment for the plaintiff.

*Wm. Brown, C. C. Remington* and *Wm. Hoxie,* for appellants:

1. The agreement to discontinue the suit, having been made on Sunday, was void. 1 Chand., 33 and 207; 3 Wis., 345–6; Story on Con., §§ 616–620; 7 Blackf., 479; 4 Cushing, 322; 4 Coms., 455; 7 Wend., 276–281; 14 id., 248; 2 Peters, 527; 14 N. H., 140. If the agreement had been pleaded before the justice, that court could not have lent its aid to enforce it. There is, therefore, no case made by the complaint for equitable relief. 2. If the settlement could avail anything, it should have been pleaded *puis darrein continuance,* before the justice. 2 Cowen's Treat., 16; 5 Hill, 393; 7 Johns. Ch., 181; 3 Coms., 522; 4 id., 71; 11 Paige,

20–1.  And where a party has had an opportunity to avail himself of a defense at law, and has omitted to do so, he cannot resort to a court of equity to obtain the benefit of the same defense.   2 Lead. Cases in Eq., 2 ; 3 Coms., 452 –466 ; 2 Story's Eq. Jur., § 888.   Every thing is considered litigated which might have been litigated in a former action. *Embury vs. Conner*, 3 Coms., 522.

*G. Stevens*, for respondent, contended that the justice's judgment was inequitable, because no cause of action originally existed, *Blakesley* having bought the lumber of one whom he had a right to treat as *Johnson's* agent, and paid him for it ; that the payment to *Johnson* on Sunday of the full value of the lumber, destroyed the cause of action if one had existed, especially as no offer was made before the judgment to return the articles transferred in payment, and the transaction was thus ratified ; and because the judgment was excessive in amount, and the respondent was entitled to relief at least against the excess.   Story's Eq. Jur., §§ 885, 887 ; *Marine Ins. Co. vs. Hodgson*, 7 Cranch, 332; *Jarvis vs. Chandler*, 1 Turn. & Russ., 319 ; *Truly vs. Wanzer*, 5 How. (S. C.), 141.   2. That the judgment was obtained by fraud, *Johnson* having made use of the settlement (whether valid or not) to prevent *Blakesley* from defending the suit before the justice.

*By the Court*, PAINE, J.   This was an action brought to restrain perpetually the collection of a judgment rendered by a justice of the peace, against the plaintiff.   The ground for relief is, that while the suit was pending before the justice, the parties met and agreed upon a settlement, by which the plaintiff in that suit received a watch and some other things, estimated in all at the value of twenty-seven dollars, in full of all claims and demands, and agreed to discontinue this suit, but instead of doing so, went on the adjourned day and procured this judgment, without the knowledge of the plaintiff in this suit, who remained ignorant of it until the time for appealing had expired.

We think the evidence shows such a state of facts.   Indeed, the appellants do not deny that the agreement was

April 10.

made as claimed. But they seek to avoid its effect for several reasons. First, it was made on Sunday. But we think that is immaterial. For it may be conceded that an agreement so made was void and could not be enforced, or might be set aside though executed, upon which we express no opinion, yet it would not follow that either party to it could use it to perpetrate a fraud upon the other. It is very easy to see that, although such agreement is void, it might very readily be used, if relied and acted on by the defendant in a suit pending, to throw him off his guard and prevent his appearing to defend himself. And the question is, whether it was so fraudulently used, and not whether it was valid in law. We think the evidence here shows such a use made of it, and that the plaintiff in the suit before the justice obtained an unjust judgment by means of it, which ought not to be enforced. The injustice of the judgment is apparent in two particulars. First, the evidence in this suit, taken alone, shows a good defense to the entire claim before the justice. The defendant there was sued for converting some lumber. He alleged in defense, that he bought the lumber of one Taylor, who was the owner. The evidence of Christenot, who was sworn for the defendants in this suit, tends to show that Taylor and *Johnson*, the plaintiff in the justice's suit, had a joint title to the lumber. But whether that was so or not, he swears expressly that Taylor and *Johnson* were "in the habit of selling each other's lumber at the mill, with the knowledge of each, and no objection from either." This would clearly make them agents for each other with respect to third persons dealing in good faith. And if the plaintiff in this suit bought the lumber of Taylor in good faith, and there was nothing to raise any suspicion that it was not so bought, he would hold it, even though it belonged to *Johnson*. The latter would have to look to Taylor for his pay, whom, by his course of dealing, he had made his agent as far as the public were concerned.

The other respect in which the injustice of the judgment appears, is its amount. The only proof on the subject shows that the amount of the lumber was about 4,000 feet; that common lumber, which this was, and part of it poor at that,

January Term, 1861.

BLAKESLEY
v.
JOHNSON.

was worth $8 per thousand. The plaintiff in this suit bought it of Taylor for a watch estimated at $15, and $17 in money. He testified that it was worth only $25. It appears that the plaintiff in the justice's suit was willing to settle it and pay his own costs, for $27. This shows that the lumber was worth from $25 to $30. Yet the plaintiff, before the justice, took judgment for $98 damages, besides costs. Thus, even if the lumber belonged to him, he had a judgment for over three times its value. Having obtained it, therefore, by making an unjust use of an agreement for a settlement, even though void in law because made on Sunday, yet acted on by the other party, who was thereby prevented from appearing to defend himself, the judgment ought not to stand. It falls within the principle of that class of cases in which it is held that equity will relieve against an iniquitous judgment at law, where the defendant was prevented from appearing and defending his rights by any trick or artifice of the other party. The fact that such artifice was made successful by a resort to an agreement void in itself, does not change the applicability of the principle. It is well known that courts of equity will even specifically enforce an agreement void at law, when it has been so far acted on by one of the parties, that it would operate as a fraud upon the other to allow either then to repudiate it. The fact that the agreement was void, is no answer. Neither is it here. The reasoning upon which that doctrine of equity rests, is entirely applicable to a case like this, though here the relief does not consist in specifically enforcing the void agreement, but only in setting aside the unjust judgment obtained by means of it. The same conclusion is also sustained by the rule in respect to verbal stipulations relied and acted on by the parties. One party will not be allowed to make use of such a stipulation to obtain an unjust advantage of the other, who relied and acted on it, though the stipulation itself, to be binding, ought to have been in writing. *Burnham vs. Smith*, 11 Wis., 253, and authorities cited.

The only evidence raising any question as to the plaintiff's right to relief, is that showing that after this agreement was made, he had some knowledge that the suit was likely to be

prosecuted. If he had been fairly informed of this in time to appeal and defend himself, or even if he had known of the judgment in time to appeal, his right to any relief in equity would fail. But on examining the evidence upon that point, we are satisfied it ought not to defeat the right in this case. It only shows that on the adjourned day of the justice's suit, at a late hour in the day, the defendant, while in attendance upon a convention, was informed by the justice that the suit had "been called and held open." He replied that he "had nothing to do with it," and took out his receipt and showed it to the justice, and asked him "if that was not sufficient to kill the suit." The justice said he supposed it was. A lawyer also advised the defendant to the same effect; and the justice, on being asked in the evening how the suit stood, said, "it was in abeyance," or something to that effect. We are satisfied from this evidence that the impression left upon the mind of the party was, that no judgment could be rendered against him—that his receipt was just as effectual to "kill the suit," although kept in his pocket, as it could have been if he had appeared and presented it; and that it was wholly by reason of his reliance upon that, that he failed to defend himself, either by appearing or appealing. We think the evidence fails to show any fraud on the part of the plaintiff in this suit, in making the agreement for settlement. Nor is his right to relief affected by the fact that before this suit was commenced, the plaintiff in the justice's suit offered to return the things received on that agreement. It is obvious that that would not restore this plaintiff to the position he before occupied, nor cleanse the judgment of its iniquity. He should restore not only what he received on that agreement, but relinquish the unjust advantages he obtained by means of it.

The assignees of the judgment took it subject to the equities between the parties, though the proof here shows that they were aware of the facts. The judgment of the circuit court is affirmed, with costs.