STEPHENS *et al. v.* THE HEIRS OF HARROW.

Fraudulent conveyance: VALID BETWEEN THE PARTIES AND THEIR HEIRS. While a deed executed to defraud creditors is, as to them, void, it is, nevertheless, valid as between the parties and their heirs; and a court of equity will not require a reconveyance from the grantee or his heirs by way of enforcing a secret trust, whether existing in writing or parol.

*Appeal from Wapello District Court.*

FRIDAY, JANUARY 29.

THIS is a suit in chancery, commenced in 1857, to enforce the performance of a trust under which it is alleged the ancestor of defendants held the title to certain lands. The bill prays for a partition of the lands. The facts, as shown by the record, are briefly as follows:

Charles F. Harrow, about the year 1843, settled in Wapello county. He had before this lived in Indiana, and had been engaged in business with apparently considerable means, but failed, and at his removal left many debts unsatisfied. He was possessed of considerable means when he arrived in Iowa. He purchased several tracts of land a few years after he removed to the State, and the deeds therefor were made to Francis M. Harrow, his son, who at the time was a minor and lived with his father. In 1848, at the request of his father, Francis executed and delivered to him a declaration of trust, setting out that the title of the lands was held for his benefit, to be conveyed to him or under his direction upon request so to do. This instrument is lost. The defendants contend that the contents are as stated, while it is insisted by plaintiffs that it was in fact a conveyance, and operated as such. The father died in September, 1853, the son in October, 1855. The plaintiffs are the legal representatives and heirs and assignees of the heirs of the father, Charles F. Harrow, and the defendants are the heirs of the son, Francis M. Harrow. The District Court, upon a trial on the merits, found the equities of the case with defendants, and rendered a decree dismissing the bill. Plaintiffs appeal.

*Hendershott & Burton* for the appellants.

*Edward H. Stiles, M. J. Williams* and *Withrow & Wright* for the appellees.

I. The testimony shows, conclusively — indeed it is an admitted fact in the case — that the trust relation which the plaintiffs seek to establish resulted from the investment of money belonging to Charles F. Harrow in the land in controversy, taking the title to and in the name of his son, Francis M. Harrow, with the intent and for the

express purpose of defrauding the creditors of the said Charles.

This is the same as if Charles F. Harrow had procured the title to be made directly to him, and he then had voluntarily conveyed the same to Francis M., with the intent to defraud his creditors. If Charles F. had in his lifetime instituted suit against Francis to recover these lands and cause a reconveyance, the authorities are uniform in a long line of unbroken decisions that the courts would have denied him relief and held the conveyance as between the parties valid. His heirs inherit no greater right, but stand in the shoes of their ancestor. What right they have to the land is by inheritance from him. He, leaving none, transmits none to them.

While a deed made to defraud creditors is as to them void, it is nevertheless valid as against the grantor and his children. *Reichart* v. *Castatur,* 5 Binn. 109; *Osborn* v. *Moss,* 7 Johns. 161; see also *Hendricks* v. *Mount,* 2 South. 738.

None but creditors or purchasers, without notice, can take advantage of a fraudulent deed. *Swanzey* v. *Hunt,* 1 N. & M. 211. It is good and valid as to all other persons. *Burgett* v. *Burgett,* 1 Humph. 469; *Woodman* v. *Bodfish,* 25 Maine (12 Shepley) 317; *Owen* v. *Dixon,* 17 Conn. 492; *Kimmet* v. *McRight,* 2 Barr, 38.

A party to a fraudulent conveyance can not set up his fraud to avoid the conveyance, nor can his grantee or his heirs impeach such conveyance. *Barton* v. *Morris,* 15 Ohio, 408; *Turner* v. *Campbell,* 3 Gratt. 77; *Sharp* v. *Caldwell,* 7 Humph. 415; *Murphy* v. *Herbert,* 16 Penn. St. 50.—a very strong case; *Choteau* v. *Jones,* 11 Ill. 300; *McCleny* v. *McCleny,* 3 Texas, 192; *Irwin* v. *Longworth,* 20 Ohio, 581; *Brown* v. *Webb,* 20 id. 389; *Kinneman* v. *Miller,* 2 Md. Ch. Decis. 407; *Bret* v. *Aylet,* 6 Eng. 475.

A fraudulent conveyance is valid as to the grantee not only against the grantor, but his heirs. 2 Carter (Ind.) 196.

A grantor who executes a conveyance of land to defraud creditors, is bound thereby to the grantee and his heirs, whatever may have been the circumstances attending or subsequent to the conveyance and the declaration of the grantee. *Broughton* v. *Broughton*, 4 Rich. (S. C.) 491 — exactly in point.

A deed which is made to defraud creditors, though void as to them, is binding upon the grantor and his heirs. *McLaughlin* v. *McLaughlin*, 16 Mo. (1 Bennett), 242.

A deed fraudulent as to creditors may be impeached by them, but it is good against all others, and can not be impeached by the grantor or by his representatives or heirs at law. *Cushwa* v. *Cushwa*, 5 Md. 44.

Where an intestate previous to his decease conveys any of his property to defraud his creditors, a distributee can not impeach the conveyance. It is valid between the parties and their representatives. *Ellis* v. *McBride*, 27 Miss. (5 Cush.) 150. See also 10 Texas, 159; *Cobb* v. *Norwood*, 11 id. 556.

The heirs of a party who caused land to be conveyed to delay or defraud creditors can not impeach it. *Danzey* v. *Smith*, 4 Texas, 411; *Fowler* v. *Stoneman*, 11 id. 478.

While a fraudulent conveyance is void as to creditors, it is obligatory on the parties and their heirs. *Lenox* v. *Notrebe*, 1 Hemp. 251.

A fraudulent conveyance is obligatory on the *grantor* and his *heirs*, but not as to purchasers or creditors. *Lenox* v. *Notrebe*, 1 Hemp. 251.

A voluntary conveyance is good against an *heir at law*, and against all but creditors and purchasers without notice. *Jewett* v. *Porter*, 11 Foster (N. H.) 34.

A sale void as against creditors is good as against *all the world* except creditors and purchasers without notice.

*Osborn* v. *Tunis,* 1 Dutch (N. J.) 633; *Drum* v. *Painter,* 27 Penn. St. 268; *L. M. & C. R. R. Co.* v. *Seeyer,* 4 Wis. 268; *Clute* v. *Fitch,* 25 Barb. 428; *Huy's appeal,* 29 Penn. St. 219.

An administrator cannot set aside a conveyance which was binding upon the deceased, on the ground of fraud, where the creditors have waived their right to impeach the conveyance. *Winro* v. *Barnett,* 31 Miss. (2 George) 653; *Snodgrass* v. *Andrews,* 30 id. 472.

Nor can the personal representatives of the grantor. *Gulby* v. *Hall,* 31 Miss. 20.

A conveyance of land, though fraudulent against creditors, is valid against the grantor *and his heirs. Montgomery* v. *Hunt,* 5 Cal. 356; *George* v. *Williamson,* 26 Mo. (5 Jones) 190; *Getzler* v. *Saroni,* 18 Ill. 511. See also *Davis* v. *Graves,* 29 Barb. 480; 6 Seld. 189; *Fargo* v. *Ladd,* 6 Wis. 106; *Graser* v. *Stellwagen,* 25 N. Y. 315.

A deed made to delay or defraud creditors is void only as to them, and is valid not only against the grantor, but *his heirs. Lakerson* v. *Stillwell,* 2 Beasly (N. J.) 367; 1 Am. Lead. Cas. 75 and 76, and the numerous authorities there cited; *Stewart* v. *Iglehart,* 7 Gill. & John. 132–136; *James* v. *Birds, Adm.,* 8 Leighton, 510; 2 Halst. 174; Roberts on Frauds, 646; 1 Story's Eq. Jur. § 371.

But we are not without authority upon this point in our own State. The precise question is adjudicated, and the maxim *in pari delicto melior est conditio possidentis et defendentis* said to apply not only against the grantor in a fraudulent conveyance but his *heirs,* in *Holliday* v. *Holliday,* 10 Iowa, 200. Nor will "equity enforce a reconveyance, nor enforce a *secret trust* (just what is asked by plaintiffs in the case at bar) in favor of the grantor or his *heirs. The rule is well settled.*" Per WRIGHT, J., in same case.

It may be urged that there is evidence to show that

there was a written declaration, signed by F. M. Harrow, acknowledging the trust, and that this fact changes or takes this case from the operation of the rule. But it makes no difference whether the trust be by parol or in writing, the rule is the same, as is clearly shown by a number of the authorities above cited, and especially in the case of *Murphy* v. *Herbert*, 16 Penn. St. 50, where this point is expressly ruled. It is there said that " to enable a party to show a trust in the face of a deed, the object must have been an honest one, and whether the trust be by parol or in writing, the rule is the same." That case " goes on all fours " with the one at bar, and is decisive of it. That this trust declaration, if there ever was one, was a part of the arrangement to defraud creditors, is beyond doubt.

II. The Lyon land was purchased by Francis M. Harrow, with his own means, and not with those of his father, before the execution of the declaration of trust, and was not included in that instrument.

Beck, J. The decision of this case turns chiefly upon the facts. We will not attempt a discussion of the evidence, but aim to state briefly our conclusions thereon.

I. We find from the evidence that the lands in controversy, excepting those purchased of Lyon, were purchased by Charles F. Harrow with his own means, and that he caused the title thereof to be conveyed to Francis M., with the fraudulent intent of hindering the collection of debts which he owed. There exists some doubt whether the Lyon land was purchased by Francis M. with his own money, yet the preponderance of the evidence is to that effect. The decision of the case, so far as this land is concerned, it will be found, turns upon another question.

II. The instrument executed by Francis M., in 1848, was a declaration of trust, and not a conveyance, nor did

it operate as such, having neither words of conveyance nor being so intended. Upon this point there is great conflict of evidence, and it is not free from doubt. But the preponderance of testimony is decidedly in support of our conclusion. All the witnesses who give evidence of its contents describe it as a declaration of trust simply.

Their evidence as to its contents gives it that character, except the attorney who drew the instrument. He states that it contained words of conveyance, and that it, in his opinion, operated as a conveyance. His deposition was twice taken. In his last deposition, taken in 1866, he gives it the character of a conveyance; in his first deposition, taken in 1859, he states the contents of the instrument to be a declaration of trust and an agreement to convey the lands in accordance with the request or any will or devise of Charles F. Harrow. The evidence, in our opinion, clearly establishes that the instrument was a simple declaration of trust.

III. This declaration of trust did not embrace all of the land in controversy; about 200 acres purchased of Lyon and denominated in the arguments of counsel the "Lyon land" were not intended to be covered by it.

Upon this point, too, there is great doubt and considerable conflict of evidence, but more uncertainty and vagueness probably than conflict. It seems that the determination of this point turns upon one question: Was the Lyon land purchased before the execution of the declaration of trust? If not, it is not claimed that it was included in that instrument. It appears that upon this question there ought not to be such uncertainty in the evidence. There certainly is in existence, evidence upon this point that is positive and direct; but the parties have not produced it.

In our opinion the preponderance of evidence establishes the fact to be, that the land was bought after the

execution of the declaration of trust and was not included therein. Some of the reasons for this conclusion are the following : The attorney who drew the instrument and seems to have been well acquainted with the property and affairs of the parties, does not mention this land, although he enumerates other land included in the declaration of trust, and especially names the persons of whom Harrow purchased them. The deeds for the land were executed — one in 1849, the other in 1850 — after the date of the execution of the declaration of trust, which was in 1848. This fact, of no great weight upon the question, will, at least, throw the burden upon the plaintiff, of proving the date of the purchase. Without other evidence, the deeds will establish the date of purchase to have been upon the day of their execution. There are other circumstances and facts in the record which, with considerable force, sustain our conclusion.

It is conceded, in argument by plaintiffs' counsel, that if the Lyon land was not included in, or covered by, the declaration of trust, recovery in this suit cannot be had as to that land. Here, so far as that land is concerned, the case ends; but there being other property involved, it becomes necessary to discuss other questions which affect equally all the property involved in the suit.

IV. It is a well settled doctrine, that a deed executed to defraud creditors, is valid between the parties and their heirs, and that a court of equity will not require the grantee or his heirs to reconvey by way of enforcing a trust between the parties. *Holliday* v. *Holliday*, 10 Iowa, 200 ; see also the numerous authorities cited by Mr. Stiles, one of defendants' counsel. The rule is not changed if the trust be embraced in writing. See *Murphy* v. *Herbert*, 16 Penn. St. 50, and authorities cited by Mr. Stiles.

The question arises, was the declaration of trust a part of the original fraudulent scheme to defeat the creditors

of Charles F. Harrow, or did it originate in honest motives?

We are unable to discover from, the evidence, any change of purpose on the part of Charles F. or Francis M. Harrow, in the act of taking and executing the declaration of trust. At that time Charles F. was still indebted, and the very reason the instrument was executed was to enable him, in greater safety, to continue to thwart and defeat his creditors. The execution of the trust was prompted by no honest purpose on the part of himself and son. Had that been the motive, the property would have been honestly uncovered by removing the fraudulent barriers thrown around it for its protection against creditors. Honest intentions would have prompted an open conveyance of the property. The sole motive for the execution of the declaration of trust, was to enable Charles F. Harrow to defraud his creditors, and retain the enjoyment of his property, and secure it to his heirs. It was a part and continuation of the scheme of fraud which began in purchasing property with his own means in the name of his son. A desire to protect himself from anticipated dangers, growing out of the death or want of faithfulness of his son, was the motive on his part, participated in by the son, which led to the fraudulent device of the declaration of trust. A court of equity will not enforce it. The decree of the District Court, dismissing the bill of complainant, is

Affirmed.

Cole, J., dissenting.

## The State v. Newberry.

1. **Criminal law: INDICTMENT FOR ASSAULT WITH INTENT TO COMMIT AN OFFENSE.** In an indictment for an assault with intent to commit an offense, it is not necessary to make all the averments required in an indictment for the offense itself.

2. —— It was accordingly *held*, that in an indictment for an assault with intent to commit murder, it was not necessary to aver that the assault was made with malice aforethought.

*Appeal from Guthrie District Court.*

Friday, January 29.

The defendant was indicted, tried and convicted of the crime of an assault with intent to murder; and he appeals.

*Phillips, Gatch & Phillips* for the appellant.

*H. O'Connor*, Attorney-General, for the State.

Cole, J.—The indictment charges that the defendant " willfully, feloniously and unlawfully did make an assault, etc., with intent him, etc., then and CRIMINAL LAW: there to kill and murder, contrary, etc." The assault with intent to only point made is, that the indictment is bad, commit. for that it does not charge that the assault was made " with malice aforethought."

That it is necessary, in an indictment for murder under our statute, to charge that the homicide was done with malice aforethought, cannot now be questioned. Rev. §§ 4191–3 ; *The State* v. *Neeley*, 20 Iowa, 110. But in an indictment for an assault with intent to commit an offense, it is not necessary to make all the averments required in an indictment for the offense itself. *Commonwealth* v. *Rogers*, 5 Serg. & R. 463 ; *Commonwealth* v. *McDonald*, 5

Cush. 365. The statute under which this indictment was found is as follows: Revision, "Sec. 4214 (2591). If any person assault another with intent to commit murder, he shall be punished by imprisonment in the penitentiary not exceeding ten years." It is the *intent* with which the *assault is made*, which constitutes the offense, rather than the intent which enters into and forms an ingredient of the offense intended. Of course, in making proof of the crime of an assault with intent to commit a particular offense, it is incumbent upon the State to show such facts as will manifest the intent to commit the offense charged; if that can only be shown by proving a particular intent or act, as an essential ingredient of such offense, that intent or act must be proved; it is sufficiently charged, however, where the indictment charges the assault with an intent to commit the offense of which that intent or act forms an essential ingredient. In other words, so far as *intent* is concerned, an indictment for an assault with intent to commit an offense, which is sufficient for any *one* of the offenses thus indictable, is sufficient for *any other*. The ingredients of the offense intended to be committed, whether of intent or act, are not necessary to be charged in an indictment for an assault with intent to commit it. And this, for the reason that these aggravated assaults are offenses entirely outside and independent of the offense intended to be committed. They are as the vestibule to the hall of crime. They have their own surroundings, which characterize that class of crimes, and are necessary to be stated in the indictment for any of them; while the offense intended is only to be *pointed at*, not *defined*.

Affirmed.