Clemens vs. Clemens and wife.

We think the judgment of the circuit court is correct, and that it must be affirmed.

*By the Court.*— Judgment affirmed.

CLEMENS vs. CLEMENS and wife.

28 637
81 608
28 637
90 474
28 637
94 22
95 299

(1–3) *Conveyance, etc., void as to creditors—Rights of the parties.* (4) *Estoppel by former judgment.* (5) *Complaint in former action as evidence.*

1. A conveyance of land, or sale of personal property, or an executory agreement in relation thereto, made for the purpose of hindering or delaying creditors, though void as against them, is valid as between the parties; and the maxims, "*Ex turpi causa non oritur actio*," and "*In pari delicto potior est conditio defendentis*," do not apply to controversies at law or in equity growing out of such conveyance, sale or agreement.

2. In an action, therefore, to establish plaintiff's equitable rights in certain land, included with other lands in his deed to defendant, on the ground that it was so included through mistake or through defendant's fraud, the fact that such conveyance was made for the purpose of hindering creditors is no defense.

3. The legal maxims above stated do not apply to such a case for the further reason, that as to the particular land in dispute there was no fraudulent intent on the grantor's part even in respect to the creditors.

4. Judgment against plaintiff in an action to compel defendant to re-convey to him a certain eighty acre tract of land, on the ground that the same was deeded to defendant under an agreement to re-convey, and that he procured the conveyance by means of such agreement with an intent to defraud plaintiff—does not bar an action to set aside the deed so far as it conveyed one forty of the land, upon the ground that said forty was included in the deed by mistake, or through defendant's fraud, and without the knowledge of the plaintiff.

5. The complaint in such former action is *evidence* against plaintiff tending to show that there was no such mistake, or such fraud on defendant's part, as is alleged in this suit; but it is *not conclusive* evidence.

APPEAL from the Circuit Court for *Waukesha* County.

This action was commenced in July, 1869. The original

complaint, under which the trial was had, alleged, in substance, the following facts: 1. That on the 1st of March, 1848, plaintiff purchased of the United States the south half of a certain described quarter section of land in said county, containing eighty acres, and on the same day received a patent therefor; that he went into possession, and had been in the continued possession, use and occupation thereof from that time until the commencement of the action, and had made large and valuable improvements thereon; had built a dwelling house thereon, in which he had continued to reside as his homestead, and had paid the taxes levied on said lands. 2. That said lands were worth at least $4,000 at the commencement of the action. 3. That a suit had been commenced in said circuit court against the plaintiff and one Ellis, sheriff of said county, in favor of one Dolph, to restrain said sheriff from executing and delivering to this plaintiff a deed of certain 'lands of said Dolph, sold by said sheriff to this plaintiff; and that this case was appealed to the supreme court. 4. That while said suit was pending in the supreme court, the defendant *Silas Clemens*, a son of this plaintiff, represented to him that in order to save his property in case said suit was decided against him, plaintiff had better give to said *Silas* a deed of one forty acre tract of said eighty (the other forty being exempt), promising to put such deed on record, and to deed the property back to him (this plaintiff) if at any time he desired it; that said *Silas* further proposed that they should employ one Carpenter (who was a justice of the peace in said county), who would "fix it up right"; that plaintiff and said *Silas* accordingly went to said justice, who proposed to draw a deed of said land running from plaintiff to said *Silas*, and also suggested, in order to make it appear fair on its face, that he would put the consideration in the deed at $1,200, and *Silas* could give his notes in payment, and at any time when plaintiff wished he could return the notes to *Silas*, and the latter could deed back the land; that this arrangement was agreed upon, and said justice commenced making the pa

pers, and plaintiff left the room ; that without plaintiff's knowledge or consent, at the suggestion of said *Silas*, the justice inserted in the deed the description of the whole eighty, instead of the forty acres, which it was understood were to be deeded; that plaintiff executed said deed March 28, 1856, the consideration expressed therein being $1,200 ; that *Silas Clemens* executed and delivered to plaintiff his two notes for $500 each, with interest, payable in three and four years respectively, from that date; and that *Silas*, at plaintiff's request, had said deed recorded the next day.    5. That on the 5th of March, 1866, plaintiff caused a deed to be made in blank, conveying said lands from the defendants to him, and presented said deed to *Silas Clemens*, with a request that he would execute it, and at the same time tendered to him the two notes above described, and offered to repay him for all the trouble and expense to which he had been subjected in relation thereto ; but that said defendant refused to receive the notes, or to execute said deed, and claimed the land by virtue of plaintiff's deed to him.    6. That *Adeline Clemens* the other defendant, is the wife of said *Silas*, and as such claims some interest in said lands, by virtue of plaintiff's said deed.    7. That said deed was not read over to plaintiff at the time he executed it, and he was not informed that said deed was for the whole eighty acres, but supposed, at the time he executed it, that it was for forty acres only, and always so understood until a short time before the commencement of the action, and was not informed that a description of the whole eighty acres had been inserted at the request of said *Silas*, until sometime in April, 1869.    8. That said *Silas* had never paid anything for said deed, nor had he paid anything on said notes, at any time; that it was understood at the time they were given, that they were not to be paid; and that before the commencement of this action they were outlawed and of no value.    9. That the procuring of said deed from plaintiff by said *Silas* was done solely for the purpose of cheating the plaintiff and defrauding him of his land.    10. That said deed was

Clemens vs. Clemens and wife.

a cloud upon plaintiff's title.     11. That since the execution of the deed, plaintiff had made large, valuable and permanent improvements on the land, to the value of at least $1,000.

The prayer of the complaint, upon these alleged facts, was, that said deed and the record thereof be adjudged fraudulent and void, and be canceled of record; that the defendants, and all persons claiming under them, be adjudged to have no right, title or interest in or to said premises by virtue of said deed; that the title in fee be adjudged to be in plaintiff; and for general relief.

The defendants, after denying the averments of the complaint setting up fraud or mistake in said conveyance from plaintiff to *Silas Clemens*, set up the following additional defenses:     1. That plaintiff's cause of action, if he ever had any, was barred by the statute of limitations.     2. That plaintiff had commenced an action in said court on the 5th of March, 1866, against these defendants for the same cause of action set forth in the complaint herein, and praying for the same relief; and that judgment had been entered in that action, at the March term, 1869, in favor of the defendants; and that said action and judgment were a bar to the present action.

On the trial of this action, defendants put in evidence the record of plaintiff's former suit against them, referred to in their answer.     It appears that there was an original and an amended complaint filed in that suit.     Both of them allege substantially the same facts which are set up in the complaint in this action, except that neither of them contains any averment to show that the forty acre tract constituting the homestead was included in the deed without plaintiff's knowledge or consent.     The relief claimed in the original complaint in said suit was the same as that claimed in this action, as above set forth.     The amended complaint contained a further averment that the defendant *Silas* ought not to retain title to the land without paying what it was reasonably worth when the deed was executed, to wit: the sum of $3,000, and that plaintiff claimed an equitable lien on the

land for that sum, with interest; and the relief demanded was, that defendants, etc., might be foreclosed of all equity of redemption or interest in said premises, that the same might be sold according to law, and the proceeds applied to the payment of the costs and disbursements in said action, and of said sum of $3,000 and interest; and there was a further prayer for general relief. The judgment in that action was for the dismissal of the complaint, on the ground (as the record shows), that "the statute of limitations had run against the plaintiff."

The other evidence introduced upon the trial of this action need not be stated. The court found the facts substantially as alleged in the complaint, and, among other things found that the forty acre tract constituting the homestead was included in the deed to *Silas Clemens* at his suggestion, and without the knowledge or consent of the plaintiff; and also that plaintiff did not know until some time in 1866, that the whole eighty was deeded, and did not know until some time in June, 1866, that this was done at the instigation of said *Silas*. It also found that the issue in the former action, mentioned in the answer, was not the same as in this, nor the questions there presented for adjudication the same as are presented for adjudication in this action. As conclusions of law, the court held "that the east half of said eighty acres of land was inserted, and in form conveyed by said deed to the defendant, by mistake on the part of said plaintiff, and was procured by said defendant to be so inserted and conveyed by fraud on his part, and that said deed ought to be corrected so as to embrace only the west half of said eighty acres; and that such judgment should be entered in this action as will so *correct said deed, and vest all defendant's title to said east half in the plaintiff,* and bar said defendant and all claiming under him from all interest therein," etc. The court also permitted plaintiff to amend, and he did amend, the complaint, so as to aver therein which part of said eighty acres was his homestead, exempt from execution.

Judgment was rendered for the plaintiff in pursuance of the

foregoing conclusions of law. The defendants excepted to the several findings of fact adverse to them, and to the conclusions of law ; and appealed from the judgment.

*Westover & Edwards,* for appellants, argued, that plaintiff had no claim upon a court of equity to annul the whole deed, voluntarily executed in fraud of plaintiff's creditors (*Reynolds v. Vilas,* 8 Wis., 471; *La Crosse R. R. v. Seeger,* 4 id., 269; *Fargo v. Ladd,* 6 id., 118; *Orton v. Knab,* 3 id., 598); that upon the allegations of the complaint, if they had been confessed, he could not have had a judgment annulling any part of the conveyance, because there was nothing to show *what* land was included by error (*Coles v. Bowne,* 10 Paige, 526 ; *Pattison v. Hull,* 9 Conn., 747); that equity would not interfere to *reform* a deed made with intent to defraud creditors, nor grant relief to either party to such a transaction (*Reynolds v. Vilas, La Crosse R. R. v. Seeger,* and *Fargo v. Ladd, supra ; Bolt v. Rogers,* 3 Paige, 154; *McClenny v. Floyd,* 10 Texas, 159); and that plaintiff had been guilty of culpable negligence, as shown by his own allegations and evidence, and was therefore not entitled to equitable relief. *Duke of Norfolk v. Worthy,* 1 Campb., 337 ; *Jackson v. Croy,* 12 Johns., 427 ; Hilliard on Vendors, ch. 21, sec. 15. They also contended that the court erred in some of its findings of fact; and to the point that a deed should not be reformed without clear, strong and unequivocal evidence that *both* parties understood the agreement as the plaintiff claims it, they cited *Nevius v. Dunlap,* 33 N. Y., 676; *Ledyard v. Ins. Co.,* 24 Wis., 496, and cases there cited; *Lyman v. Ins. Co.,* 17 Johns., 373; *Beard v. Hubble,* 9 Gill, 420; *Shay v. Pettes,* 35 Ill., 360; *Marvin v. Bennett,* 26 Wend., 164.

*Edwin Hurlbut,* for respondent, cited 6 Wis., 592; 13 id., 355 and 458; 17 id., 340; Burr., 99; Willard's Eq., 160, 164, 169, 304, 305; *Sears v. Shafer,* 2 Seld., 272, and cases there cited. He also insisted that this court was concluded by the finding of facts by the court below, unless the same was unsupported by *any* evidence, or unless the contrary facts were

clearly established by undisputed evidence, citing *Austin v. Steamboat Co.*, 43 N. Y., 75; *Browne v. Vredenburgh*, id., 195.

DIXON, C. J.    The court below found as a fact that the issue in the former action by the plaintiff against the defendants, which was dismissed at the June term, 1869, of the circuit court for Waukesha county, on the ground that the statute of limitation had run against the claim of the plaintiff, was not the same as in this action, nor were the questions or matters therein adjudicated the same as presented here.    This finding was correct, as appears from the pleadings and judgment in the former action.    No issue or question of fraud or mistake in inserting a description of the east or homestead forty acres in the deed, was made in that action; and therefore the judgment is not, in the legal or technical sense, a bar to this action.    The record, and especially the complaint, is only evidence to be considered upon the question of fraud or mistake presented in this suit; and it certainly, as claimed by counsel for the defendants, has a very strong tendency against the plaintiff.    It tends not only to show that there was no fraud or mistake in including the east forty in the deed, but also, if there was, that the plaintiff had knowledge of it at or about the time the deed was executed.    This inference, we say, is very strong, both from the facts stated in the former complaint, and from the omission of the plaintiff to allege or complain at that time that the east forty was wrongfully or fraudulently inserted in the deed.    Yet the court below has found that those circumstances were sufficiently explained by the testimony of the plaintiff given on the trial of this action, and that he had no knowledge of the fraud or mistake until some time in the year 1866.    The former suit was commenced in March of that year.    Without expressing our entire satisfaction upon these points, we are nevertheless inclined to agree with the learned judge before whom the cause was tried.    The plaintiff is an illiterate person, unable either to read or write, ignorant of the forms and modes of transacting business, and

one very easy to have been misled, or to have fallen into error, both at the time the deed was executed and when the former suit was commenced. We think it a safe and reasonably well sustained conclusion from the evidence, that he was mistaken; and as this conclusion favors the obvious justice and equity of the case between the parties, we are the more inclined to adopt it.

The plaintiff is not, therefore, estopped by the judgment in the former suit, nor bound by the statute of limitation upon the question of fraud or mistake presented in this; and it only remains for us to examine the latter question, whether the fraud or mistake is established by evidence, and the further proposition urged in defense, that, as the plaintiff conveyed the land or a portion of it, the west forty, for the purpose of delaying or defrauding his creditors, equity will not interfere to aid him in recovering back the title to any part of it, not even that part not intended to be conveyed, but which, by mistake on his part, or fraud on the part of the defendant *Silas Clemens*, the grantee, was improperly included in the deed of conveyance. The first is a question of fact, the last a proposition of law.

Upon the fact we have little doubt that the finding of the court below was correct. That there was, so far as the plaintiff was concerned, at least a mistake on his part, is very clearly shown in proof. He did not intend to convey the east forty, and had no motive for doing so. It was his homestead, and exempt, and so entirely beyond the reach of his creditors. And the same proof affords no slight ground for saying that it was inserted in the deed, not only without the knowledge or consent of the plaintiff, but by the grossly fraudulent act or procurement of the defendant.

Is the plaintiff, then, precluded from claiming the assistance of equity to correct the mistake, considering it such on his part, or from obtaining relief against the fraud, so regarding it, on the part of the defendant, upon the maxim, *ex dolo malo non oritur actio?* In other words, can the defendant set up and rely upon

the dependent principle, grown also into a maxim, *in pari delicto potior est conditio defendentis*, and thus be permitted to take advantage of his own wrong? These are the questions: Was the transaction, the conveyance by the plaintiff to the defendant of the west forty with intent to hinder or defraud the creditors of the plaintiff, *turpis causa* between these parties, rendering the contract totally void, and subjecting it and the parties, as between themselves, to the operation of the principles expressed by the above maxims? and, Are these parties *in pari delicto* as respects each other, so that neither can invoke the aid or protection of the courts against the other in regard to any matter of mistake or fraud arising out of or connected with the transaction as between them, or in regard to the non-performance or breach by either of his contract or promise entered into with the other?

It will be found, on examination, that these questions have been and are the subject of the most direct and positive conflict of opinion and decision among the courts of the different states of this union, and sometimes among the courts of the same state. The provisions of the statutes of this state, like those of most of the states, respecting conveyances, assignments, bonds or other contracts, fraudulent as against creditors, purchasers, or other persons having lawful demands, are derived from the statute 13 Eliz., ch. 5, and declare such conveyances, assignments, bonds and other contracts or evidences of debt, void only as against the creditors, purchasers and other persons thereby hindered, delayed or defrauded. R. S., ch. 108, § 1; id., ch. 106, § 1, and ch. 107, § 1. The supreme court of Massachusetts, pursuing the language of the statute, and understanding it to signify just what its words indicate, long ago held that such conveyances and contracts were void only as against creditors, purchasers and other persons named in the statute, and were in all respects valid and obligatory upon the parties themselves to the conveyance or contract, and upon all those claiming under or in privity with either and each of them, not be-

ing creditors, purchasers or others entitled under the statute to avoid the contract or conveyance by reason of their relation to the grantor, vendor or other principal party named in it, and who executed, or caused or procured it to be executed. That court holds that the transaction is not *turpis causa* as between the parties to it, and consequently, as respects them and those claiming under or in privity with them, that the contract, whether executed or executory, is not void but valid, and will be upheld and enforced both at law and in equity, the same as any other contract, and upon the same principles.

In that state, therefore, a conveyance or sale of property, made with intent to hinder or defraud the creditors of the grantor or seller, if executed in due form of law, is good and effectual to pass the title to the grantee or vendee, because, as between the parties to it, it was fairly, deliberately and intentionally executed and delivered. The grantor or seller may not claim relief, or the right to rescind or set aside the conveyance or transfer, on the ground that no consideration was paid or agreed to be. He may be concluded from doing this by reason of his fraud, but more likely for other sufficient reasons. All other remedies, however, are open to him as against the grantee or purchaser, subject of course to such defenses as may have arisen in favor of the latter by the action of creditors or purchasers, who may at any time avoid the conveyance or transfer. If the grantee or vendee has given his promissory note in consideration of the conveyance or transfer, or entered into any other promise or obligation, in other respects sufficient to pay for the property, the grantor or seller may enforce the same, or recover damages for the breach by his appropriate action at law; or, if the nature of the complaint or cause of action be such as is remediable only in equity, he may file his bill in that court, and relief will be granted in the same manner and to the same extent as between other parties to contracts or agreements not affected by the element of fraud or delay with respect to the claims of creditors or others. The doctrine

of *par delictum* has no application between the contracting parties, the conveyance or contract being considered illegal and void only so far as it is declared so by the statute.    These principles are firmly settled in that state, as will be seen by the cases of *Dyer v. Homer*, 22 Pick., 453, and *Harvey v. Varney and others*, 98 Mass., 118.

The former was an action at law in the name of the vendor upon a non-negotiable promissory note given by the vendee at the time of taking a bill of sale of certain personal property left in possession of the vendor, which bill of sale the vendee then knew was made by the vendor for the purpose of putting the property beyond the reach of his (the vendor's) creditors. The latter was a bill in equity by one member of a partnership against the four other members, for a settlement of the affairs of the firm and an account and distribution of the assets among the partners according to their several interests; which partnership was formed, and the business carried on and transacted, in the name of two of its members, for the purpose of enabling two other members to transfer to it their property in order to hinder, delay and defraud their creditors, and to keep the property so transferred, concealed and covered up from attachment, and likewise to keep the interest of said two other members in the partnership a secret, with the same fraudulent view and design. All this was done, as the court found, with the knowledge and participation of the plaintiff.    In each case there was judgment for the plaintiff.    In the first, the court held, that although the sale was invalid as against the creditors of the vendor, yet as between the vendor and vendee it was binding, and constituted a valid consideration for the note, and consequently an action on the note in the name of the promisee might be maintained. In the last the decision was, that a contract, whether executed or executory, for the conveyance of either real or personal property to conceal it from attachment by the grantor's creditors, although voidable by them, is good between the parties, even if the grantee shared in the fraudulent intent, and

that the fraudulent character of the purpose of a partnership as to creditors is no defense to a bill in equity by one of its members against the others for a settlement of the affairs of the firm. The court say: "Because the plaintiff's interest was that of a silent partner, and was kept concealed in order that it might not be attached by his creditors, the defendants, who participated in this purpose, cannot be allowed to disclose the common fraud of both parties, and thereupon appropriate to themselves his share of the capital and profits of the partnership. Except so far as creditors intervene to assert their rights, the interests of the several partners must be adjusted as if no such fraudulent purpose existed. To hold otherwise, and apply to this case the maxim, *in pari delicto potior est conditio defendentis*, would be to exercise a rigor beyond the limits of wholesome severity."

The doctrine of the foregoing cases is sustained by the earlier decisions in the same state, and especially by *Fairbanks v. Blackington*, 9 Pick., 93, 96. See also *Drinkwater v. Drinkwater*, 4 Mass., 354; *Oriental Bank v. Hoskins*, 3 Met., 322; and *Crowninshield v. Kittridge*, 7 Met., 520.

And the same is also sustained by the following cases in Maine, New York, Indiana, Texas, Illinois, and California: *Nichols v. Patten*, 18 Maine, 231; *Andrews v. Marshall*, 43 Maine, 272; *Same v. Same*, 48 Maine, 26; *Osborne v. Moss*, 7 Johns., 161; *Jackson v. Garnsey*, 16 Johns., 189; *Findley v. Cooley*, 1 Blackford, 262; *Scott v. Purcell*, 7 Blackford, 66, 68; *Moore v. Meek*, 20 Ind., 484; *Springer v. Drosch*, 32 Ind., 486 (2 American R., 356); *Horser v. Kraeka*, 29 Texas, 450; *Davis v. Ransom*, 26 Ill., 105; *Lawton v. Gordon*, 34 Cal., 36. See also *Randall v. Phillips*, 3 Mason, 388. We observe that *Findley v. Cooley*, like *Dyer v. Homer*, was an action by the fraudulent grantor against his grantee, upon promissory notes given by the latter with knowledge of the fraud, in consideration of the conveyance. The defendant plead the fraud, insisting that payment of the notes could not be enforced; but the

Clemens vs. Clemens and wife.

plaintiff had judgment. *Moore v. Meek* was much the same kind of an action, though there the note was made payable to a third person, by whom the action was brought. *Osborne v. Moss, Jackson v. Garnsey, Horser v. Kraeka,* and some others, were actions by the fraudulent grantee or purchaser against the grantor, or vendor, or their representatives, to recover possession of the property conveyed or sold, or the value of it; and the same were maintained. In the last named case, the vendor, after having given a bill of sale of his personal property in fraud of creditors, kept possession, and subsequently disposed of the property to others; and it was held he was liable for the value thereof in an action by the vendee. It is obvious that there can be no distinction in principle between allowing the fraudulent vendee to sue for and recover the possession of the property sold or its value, and permitting the vendor to sue for and recover the price to be paid. Both parties are equally in the wrong, and chargeable alike with a violation of the law, so far as that may be supposed to enter into or affect their mutual rights and obligations; and the law cannot, with any consistency, give a remedy to the one, and at the same time withhold a corresponding remedy from the other. If it gives the purchaser a remedy to obtain the property or its value from the vendor, it must, upon a like principle, give the vendor a remedy to obtain the consideration or price agreed to be paid by the purchaser for the property.

And the principles adopted by the court of Massachusetts are likewise very clearly and fully sanctioned by the supreme court of the United States, in *Brooks v. Martin,* 2 Wallace, 72. This case, as observed by the court in *Harvey v. Varney and others,* lays down principles far more extensive than is necessary to affirm the Massachusetts rule and the decisions made under it.

Opposed to the above decisions are two later ones in New York, and one in Indiana (since overruled in *Springer v. Drosch, ubi supra*); and those of the courts in some other states. *Nellis*

*v. Clark*, 20 Wend., 24; *S. C.*, 4 Hill, 424; *Moseley v. Moseley*, 15 N. Y., 335; *Welby v. Armstrong*, 21 Ind., 489; *Murphey v. Hubert*, 16 Pa. St., 50; *Eyre v. Eyre*, 19 N. J. Eq. R. (4 C. E. Green), 42; *Stephens v. Heirs of Harrow*, 26 Iowa, 458; *Stewart v. Ackley*, 52 Barb., 283; *Sweet v. Tinslar*, id., 271. These cases proceed upon a distinction between executed conveyances and executory agreements entered into in fraud of creditors and others, holding the former valid, upon the principle that the law will not relieve the grantor or his heirs or representatives from the consequences of his own fraudulent act, and the latter invalid, upon the principle that the parties are *in pari delicto*, and the law will afford no aid to either as against the other by way of enforcing the agreement. The court of Maine, in some of the cases above referred to, intimates a similar distinction; and no doubt many cases may be found where the same view has been entertained. DENIO, C. J., delivering the opinion of the court in *Moseley v. Moseley*, freely admits that such was not formerly understood to be the law, but "that contracts and conveyances made with a view to delay, hinder or defraud creditors were, nevertheless, valid and binding between the parties to such contracts and conveyances." He cites some of the earlier decisions in New York, Massachusetts and Indiana to show this, and then refers to *Nellis v. Clark* as having changed the rule, or introduced the distinction, in New York. *Welby v. Armstrong* merely follows the New York decisions, without comment upon them, or examination of principle, or reference to the opposing authorities. Aside from the discussion in *Nellis v. Clark*, where Mr. Justice NELSON dissented, the reasons in support of this class of decisions are as well stated in *Murphy v. Hubert* as in any case which has fallen under our observation.

In this state the question we are considering has never before been directly presented for adjudication. Except a remark not necessary to the decision, and casually and doubtfully made, in *Heath v. VanCott*, 9 Wis., 528, the uniform expression of opin-

ion by this court, speaking upon the subject generally, has been decidedly in favor of the Massachusetts rule. The principle established by the several decisions has been correctly stated to be, that conveyances of property and agreements between parties, made for the purpose of defrauding creditors, though void as to creditors, are nevertheless valid and binding on the parties themselves and their personal representatives. Simmons' Digest, Title, FRAUDULENT CONVEYANCES, p. 471, § 3, citing *Jones v. Lake*, 2 Wis., 210 ; *Eaton v. White*, id., 292 ; *LaCrosse & M. R. R. Co. v. Seeger*, 4 id., 268 ; *Faryo v. Ladd*, 6 id., 106 ; *Schettler v. Brunette*, 7 id., 197 ; and *Reynolds v. Vilas*, 8 id., 471. In *Jones v. Lake*, this court say : " A sale, however fraudulent as to creditors merely, is good between the parties, and all the world except creditors." In *Railroad Co. v. Seeger*, similar language is used ; and in *Fargo v. Ladd* it is said : " This court is prepared to hold, and does hold, in accordance with numerous and uniform decisions, that conveyances of property, and agreements between parties, to defraud creditors, though void as to creditors, are nevertheless valid and binding on the parties themselves and their personal representatives." Several authorities are cited to the proposition, and it is noticeable that they are mostly such as directly sustain the principle adopted and acted upon by the court of Massachusetts. And in *Remington v. Bailey*, 13 Wis., 332, it was held, in an action for the conversion of property, that the defendant could not introduce proof to show that the plaintiff acquired the property under a sale which was fraudulent as to creditors, unless the defendant was himself a creditor of the plaintiff's vendor, or had succeeded to the rights of a creditor.

Under these circumstances it may hardly be said, perhaps, that we are at liberty to adopt any other than the Massachusetts rule ; but whether we are or not, we are certainly not inclined do to so. That rule, though it may not be said to be founded on the most high-sounding notions of individual morality and integrity to be required of suitors, nevertheless appears to us

to be far the most reasonable and just under all circumstances, and to comport best with the spirit and policy both of the common law and of the statute. Judge BLACKFORD, with his usual great accuracy and sound learning upon all questions of the common law, shows, in his opinion in *Findley v. Cooley*, that by the common law such contracts were not void between the parties, but valid and actionable, and that so it was by the statute of Elizabeth. It clearly seems to us that no different policy is enacted or declared by our statutes, but manifestly the same policy; and that to hold otherwise would be, by a kind of judicial legislation, to engraft upon the statutes a policy not indicated or authorized by their letter or spirit, nor by the spirit of the common law. We much prefer adhering to the statutes as they plainly read, and to the policy thus shown, to attempting the establishment of any new policy of our own for which we possess no authority.

We hold, therefore, that the conveyance here of the west forty which the plaintiff intended to make, and for the purpose of delaying or defrauding his creditors, is not to be regarded as *turpis causa* between these parties, and that the maxim *in pari delicto*, etc., is inapplicable to actions and controversies between them growing out of or connected with the same transaction; and consequently that the plaintiff is entitled to the same relief with respect to the east forty, on the ground of mistake or fraud in its insertion in the deed, as if such had not been the character of the conveyance.

But there are still other grounds, supposing the east forty to have been included in the deed by the fraud of the defendant, as we think it was, or even supposing it to have been included by mistake, upon which the same relief must have been granted the plaintiff; and this although we had been of a contrary opinion upon the questions above considered. The intention of the plaintiff in conveying one forty acres of the land to defraud his creditors, would by no means, either in law or in morals, justify the defendant in practicing a gross fraud upon

the plaintiff to procure from him the title of the other forty, or in retaining the title to it, if conveyed by mistake. Though engaged in an illegal transaction, and unable to assert or maintain any rights or remedies founded on the unlawful thing done or intended to be, still the plaintiff forfeited no right or privilege beyond that, or with respect to any other matter or thing not within the purpose of the wrongful act, and not affected by the corrupt intent, or caused or produced in consequence of it. To the extent of his intended wrong he might be without remedy, but in all other respects his rights and remedies are the same as if no such wrong had been done or intended. This is and should be the true measure and extent of all just punishment. Though guilty of a wrong or transgression of the law in one particular, a party does not become an outlaw, or forfeit his right to legal protection in all others, nor lay himself open to the frauds and machinations of others to be practiced and perpetrated against him with impunity. If a man be in the act of wrongfully giving another his coat, it cannot excuse or justify that other at the same time in taking or stealing his cloak. Even the injunction of Scripture, designed undoubtedly to repress and discourage the spirit of litigiousness and controversy, if broadly and literally taken, does not reach such a case.

The question is like that in *Blakesly v. Johnson*, 13 Wis., 530, where this court held that the party to a contract made on Sunday, and therefore illegal, could not take advantage of the illegality, or in any manner make use of the contract, void though it was, for the purpose of perpetrating a fraud upon the other party to it. That was an action in equity between the parties themselves to the illegal and void agreement, in which one of them sought and obtained relief against the fraud of the other, practiced by means of and in connection with the contract and the subject to which it related; and the remarks of Mr. Justice PAINE, on pages 532 and 533, are equally applicable here. The defendant cannot escape the consequences or reap the fruits of his own wrong done to the plaintiff, by show-

ing that the plaintiff at the same time attempted to and did commit annother wrong against the rights of third persons. He cannot fraudulently obtain and keep from the plaintiff one forty, by showing that the plaintiff fraudulently conveyed the other to defeat the rights of creditors.

Mr. Broom, in his most excellent work entitled "Legal Maxims," page 583, treating of the maxims, *a right of action cannot arise out of fraud*, and *in case of equal fault the condition of the defendant is better*, is careful to direct the attention of his readers to the yet more general maxim, *no man shall be permitted to take advantage of his own wrong*, and to his observations upon that, in order that all may be weighed and considered together, or each with due reference to the force and application of the other. It clearly seems to us that this is a case where the latter maxim should govern with respect to the tract of land not intended to be conveyed, and the title of which the defendant has procured by fraud. "The objection," says Lord MANSFIELD, in *Holman v. Johnson*, 1 Cowper, 341, "that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." The principle or policy of the law, therefore, is to reject the suit of and reprove the plaintiff for his wrong, not to reward the defendant. The plaintiff must be punished, even though it be at the expense of allowing the defendant, an equally guilty party, to obtain most unjust and unfair advantage for himself. This looks like punishing one party and rewarding the other for the same immoral or illegal act or contract. But fraud and immorality must be rebuked and discouraged, and this object can-

not be accomplished in any other way. The suit of the party compelled to seek the aid of the courts, in order to obtain the fruits of his own fraud or wrong, must be dismissed, although it may result in unjustly giving to the other equally culpable party the entire benefit of them. The very working of the principle, this one-sided and uneven justice, suggests great caution in its application. The court must clearly see that it is the fruit of *his own* wrong, or relief from the consequences of *his own* unlawful act, which the plaintiff seeks, before his action can be dismissed. If it be not these, but something outside and independent of his unlawful act or purpose, and not necessarily resulting from it, nor caused or intended by him, and especially if it be something arising or produced *by the fraudulent act or procurement of the defendant alone*, not participated in or assented to by the plaintiff, then he is entitled to the favorable consideration of the court, and his action should be retained. Such is precisely the nature of the case here; and were it conceded that the real transaction between the parties, namely, the sale and conveyance of the west forty with intent to defraud creditors, was *dolus malus* between them, so that they were placed *in pari delicto*, as that principle is generally understood and applied, still we should be required to hold that the plaintiff was entitled to the relief granted by the court below. He could not be punished, nor his action dismissed, beyond the wrong actually done and intended by him; and the defendant could not be permitted to take advantage of his own wrong.

*By the Court.*—Judgment affirmed.