Journey v. Dickerson and Doolittle.

JOURNEY v. DICKERSON AND DOOLITTLE.

1. **Original notice:** MISNOMER: SUBSTITUTED SERVICE: TRESPASS. Where in the original notice there was a material misnomer, and the service was made by leaving a copy at the usual place of residence of defendant during her temporary sojourn at another place, and the defendant was ignorant of the pendency of the action until after judgment and the levy of an execution, when she offered to pay the amount actually due the plaintiff, after which the plaintiff and the officer sold defendant's property under the execution to satisfy the judgment, *Held*:

1. That the defendant, not being personally served, and having no actual notice of the pendency of the action, was not bound to take advantage of the misnomer by plea in abatement.

2. That under the circumstances the plaintiff in execution and the officer who executed the writ were trespassers.

*Appeal from Polk District Court.*

FRIDAY, OCTOBER 19.

IN March, 1863, Dickerson, as administrator of the estate of Henry Courtney, brought his suit against "widow Caroline I. Journey," for medical services, amounting to something over eighteen dollars. The notice was issued and served "upon the within named widow Journey, by leaving a copy at the house of James Straight, in the township of Lee, &c., which is the usual place of residence of said widow Journey, with Caroline J. Straight, a member of the family over fourteen years of age, the said Journey not being found in the county." To this action there was no appearance by defendant, and judgment was entered by default for the full amount of the claim. At this time plaintiff (whose true name is Emeline Journey), was staying for about two months with a married daughter, some eight miles from the residence of her son-in-law, James Straight, in the same county. Her usual place of residence, however, was with said Straight, his wife being her daughter, formerly Caroline I. Journey. Plaintiff was sometimes called "widow Journey and Mrs. Journey," but when called by her full name was always known as Emeline Journey; nor was she as well known by one name as the other. She had no knowledge of the institution of this suit, nor of the judgment thereon, until in January, 1865, when the defendant Doolittle, as constable, under an execution, levied upon a quantity of corn, which he afterward sold. Defendants were advised of the circumstances before the levy. The present plaintiff admitted that she was indebted to Dr. Courtney's estate, in the sum of five dollars, which she offered to pay; some efforts were made to settle and compromise the matter, which proved unavailing but certainly without fault on

her part.   There was testimony tending to show that the constable sold the corn to Dickerson at private sale, but upon being threatened with a prosecution, the same was regularly advertised and sold to his co-defendant as the highest bidder, and for its full value.   Plaintiff brings this action for the willful trespass of defendants in taking and selling said corn.   It appeared that plaintiff was the person intended to be sued, but the mistake in the name was carried into the judgment and execution.

On the trial the court instructed the jury that: "If they believed from the evidence that plaintiff was the identical defendant in the case in which execution was issued, the misnomer (if such it was) is immaterial, and defendant would be justified.   That if they found there was no other person in the neighborhood known as Mrs. Journey, and that James Straight was the son-in-law of this plaintiff, and that the house of James Straight was her usual place of residence, then the judgment of the justice was not void, but regular and binding, and an execution duly issued thereon would justify a constable in serving the same."

Other instructions were given to the same effect, to all which plaintiff duly excepted.   Judgment for defendant, and plaintiff appeals.

*M. D. & W. H. McHenry* for the appellant.

*W. G. Bentley* for the appellees.

WRIGHT, J.—Service of notice and return in actions before justices of the peace are to be made in the same manner as in the District Court.  § 3864.   In the District Court service is to be made:  1. By reading and delivering or offering to deliver a copy of the notice.   2. If not found, by leaving a copy thereof at defendant's usual

place of residence, with a member of the family over fourteen years of age. 3. By acknowledgment of service indorsed on the notice, dated and signed by defendant. 4. By publication in the cases contemplated in section 2831. If served personally, the return must state the time, manner and place of making the same, and that a copy was delivered or offered to defendant. If by leaving a copy with the family, it must state at whose house, and that it was the usual place of residence of defendant; and also the township in which the house was situated, the name of the person with whom left, that such person was over fourteen years of age and was a member of the family.

We agree with appellees that the second method, or that pursued in this case, is not to be regarded as *constructive* service. Nor is it, strictly speaking, *personal*. The fourth method is constructive, the first and third personal, while the second is strictly neither, but rather a *substitute* for the more legitimate, because safer, service by reading to or acknowledgment by the defendant. This mode of service is statutory. It is allowed in most of the States. But for the statute, actual notice of the process should always be given to the defendant. For the interests to be affected by litigation are regarded so impor- tant that it is not to be left to mere presumption or inference that the party had knowledge of the proceeding, but it should be positively and affirmatively established before further proceedings should be permitted. That this is the rule aside from the statute, see 3 Chitty's Pr., 144–5, 260, 266; Tidd Pr., 166, 170. The statute, how- ever, allows this substituted service, regarding the pre- sumption or inference fair and legitimate, that a copy thus left will come to the actual knowledge of the party sought to be charged. And yet this certainty is not actual service; for actual service means personal, either

by reading to defendant or delivering to him a copy of the process. When left at the residence, or the substituted mode is adopted for actual or personal, there is no more than a legal presumption that notice thereof does actually come to the defendant. And it would seem to be both fair and reasonable to hold that if a plaintiff depends upon this method for bringing a party into court, he should, at his peril, see to it that every substantial requirement of the law had been complied with. In the case of actual service, there is certainly much reason in the doctrine that if the defendant is misnamed, he should nevertheless appear and plead the same in abatement, or in some manner raise the objection; and that if he fails to do so, he shall not afterward be heard (especially in a collateral proceeding) to question the regularity of the judgment. For when thus served, he is advised by the writ, the law and its officers, that *he is the man* against whom the judgment is asked, and he, at his own peril, fails to give heed to the command. And when it is said in the elementary books that misnomer is only pleadable in abatement, it can only mean cases of personal service. This is true under the statute of William III and IV, ch. 4, p. 42, § 11, which provides for the amendment of the declaration, by inserting the right name, upon the judge's summons, as under the old practice allowing the plea. For it was only thus, whether by original or judicial process, that service could be made; and, therefore, the doctrine that a party could only thus take advantage of a misnomer would not apply in its reason to any other method of service. There was no necessity for extending it beyond such cases, and it should not be so extended, unless upon principle it is fairly warranted.

Where a party is served by a copy left at his residence, two or three matters are material to be considered. One is, did he really owe the debt for which the judgment was

rendered? In the next place, did he afterward, and before trial, have actual knowledge of the leaving of such copy ? If directed to him by his proper name, and the service is in due form, in the absence of fraud, or such circumstances as would entitle him to equitable relief, we entertain no doubt but that the judgment is as conclusive as though he was personally served, and this too whether knowledge of such service was or was not brought home to him before trial. And, though the return should be informal, if he actually owes the debt, that is, if he has no defense, he should not, in a court of law or equity, be heard to question the validity of the judgment collaterally. But, if appellees' doctrine is correct in this case, then this judgment is conclusive against plaintiff, though she did not owe a cent of the demand for which the action was brought. For, if this method of service is as conclusive as though personally made, and if the party was bound to appear and present, by plea or otherwise, the misnomer, or suffer the consequences of such failure, then all inquiry into the correctness of the original demand is effectually excluded. And this thought, it seems to us, tends to show the impolicy and unreasonableness of the rule.

But, that the doctrine for which appellees contend is applicable alone to cases of personal service, and where the debt was really owing, we think is fairly inferable from the authorities cited and others coming under our observation. Thus, in the case much relied on, *Trull* v. *Howland* (10 Cush., 109), there was a mistake in the christian name; there was actual service, and the debt sued for was the proper debt of the person upon whom the service was made, and it was held, most properly, that the objection was waived by failing to plead the misnomer in abatement. In *Smith* v. *Bowker* (1 Mass., 76), the judgment was rendered for a debt justly due from the defendant, and he was described in the attachment and

summons as Aaron Smith of *Orange*, when he was really an inhabitant of *Athol*, in the county of Worcester. Here, there was a mistake in the *place* of residence in describing the person; but, while the case is not very clear in its statement, we think it fairly inferable that there was a personal service. The return was, that the officer " left with him " a summons for his appearance. THATCHER, J., says, that " the writ was served on him." SEDGWICK, J., says, the " process had been legally served ; that it was duly served on him ; " and STRONG, J., says, " it is confessed that the plaintiff is the person who was served with the summons." At all events, he owed the debt for which plaintiff had judgment.

*Tilden* v. *Johnson* 6 Cush., 354, involved no question of misnomer, but the court simply decides what was a good service against a non-resident defendant, and how far the officer's return is to be regarded conclusive, as to the fact that defendant had, within the commonwealth, a " last and usual place of abode."

*Johnston* v. *Robins*, 3 Johns., 440, holds, in a case *where the defendant was properly named*, that service of a copy of the declaration, with notice of the rule to plead, on the defendant, by leaving it at the dwelling-house of the party, was to be considered as personal for all purposes, except to bring the party into contempt. And this rule, we are disposed to concede, would be equally applicable under our practice in the case of an original notice, where the defendant is properly named.

*Wheeler* v. *Lampman*, 14 Johns., 481, was when the constable failed to return the *time* of service, and upon *certiorari* it was held that it did not comply with the statute.

In *Barnes* v. *Harris*, 4 Comst., 375, the controversy related rather to the nature of the process, than to its service and the defendant was properly named. But see in that case the very well reasoned dissenting opinion of

BRONSON, Ch. J., in which JEWETT, J., concurred, for some general principles applicable to the case at bar.

In the case of *Barry* v. *Foyles*, 1 Pet., 311, the defendant appeared, discharged the attachment by giving special bail, and it was very consistently held, that a variance between the account filed in the attachment proceedings and the declaration on which the case was tried, made no difference; for no reference could be had to the attachment proceedings.

The process in *Ames* v. *Winsor*, 19 Pick., 247, was not left at the last and usual place of abode of the defendant; and the service was held defective. And it was held, that if the defendant had pleaded any plea to the merits, this would have been a voluntary submission to the jurisdiction of the court and a waiver of all exceptions to the sufficiency of the service. Commenting on this method of service however, SHAW, Ch. J., says: "The law proceeds on the supposition that, at a man's dwelling-house, there will be some person enjoying his confidence, careful of his interests, and charged with his concerns, who will give him actual notice, and such service being the most likely to accomplish that object, the statute, for many purposes, gives it the force and effect of actual notice. The law raises no such presumption, and the statute gives no such legal effect to a notice left at another place." Nor does it, in our opinion, where there is a material misnomer and such service is attempted. But of this, more hereafter.

The case of *Arnold* v. *Tourtellot*, 13 Pick., 172, was not unlike that last cited. There the process was served in the State of Connecticut, beyond the jurisdiction of the justice rendering the judgment and, on error, it was held defective.

The case of *Franklin* v. *Talmadge*, 5 Johns., 84, only decides that a deed to William T. Robinson was admis-

sible under a declaration alleging it to have been made to William Robinson. And *Roosevelt* v. *Gardiner* (2 Cowen, 463), decides no more which could by possibility apply to the case at bar.

The early case of *Crawford* v. *Satchwell*, 2 Strange., 1218, was trespass. Plaintiff sued by the christian name of Archibald. Defendant justified, and averred that plaintiff was the same person who was sued by the name of Arthur. On demurrer the plea was held good, upon the ground that plaintiff had missed his time for taking advantage of the misnomer, which should have been done by pleading it in the first action. If the service was personal, as we must presume (the case disclosing nothing upon the subject) the conclusion from the authorities was legitimate. And yet see, even as to such cases, *Melvin* v. *Fisher*, 8 N. H., 406; *Cole* v. *Hindson*, 6 Tenn., 234; also as applicable, *Binfield* v. *Maxwell*, 15 East., 87; *Shadgett* v. *Clipson*, 8 Id., 438; *Boyden* v. *Hastings*, 17 Pick., 200; *Commonwealth* v. *Perkins*, 1 Id., 387.

There are, however, other cases that seem to be more applicable to the one now before us. Thus, *Slasson* v. *Brown*, 20 Pick., 436, was debt on a bond, conditioned that Brown would not go beyond the exterior limits of the prison until lawfully discharged. That he did go without the prison limits was admitted, but the defense was that he had been discharged from his imprisonment in due course of law by taking the poor debtor's oath. The validity of this discharge was the question at issue. It appeared that a citation was issued to creditors, and among others to plaintiff, by the name of *Ebenezer* B. Slasson, his true name being *Edward* B. The service was made upon S., as attorney of *Ebenezer* B., and, says DEWEY, J.: "It is to be remarked that the notice was not served on the creditor, but on his attorney, which much strengthens the objection. Mr. S., upon whom the

service was made, was not the attorney of any one having that name, and was not, therefore, bound to take notice of any proceeding connected with the citation.   There was, therefore, no such notice as the statute requires previous to the exercise of jurisdiction, and the magistrates · had no lawful authority to proceed to discharge the debtor upon his examination and taking the oath administered to him.   It is essential to the rights of parties that they should have proper notice of all proceedings affecting their interest.   This principle lies at the foundation of all our proceedings in courts of justice, and has always been strictly applied when questions have arisen as to the validity of acts of inferior tribunals."  And upon the necessity of notice and a compliance with the statute in proceedings before inferior tribunals, see the very full and able opinion of the Chief Justice (BRONSON) in *Barnes* v. *Harris*, 4 Comst., 375.

The case of *Fitzgerald* v. *Salentine*, 10 · Metc., 436, is cited by both parties to this controversy.   And we confess that it is difficult to determine whether the judgment upon which plaintiff sought to recover in an action of debt, was held invalid because the writ in the original action was directed to the defendant by a wrong name, or because it was served by leaving a copy at his *boarding-house*.   If the latter was the sole ground of this decision, then the defect would have been equally fatal if there had been no misnomer.   And yet it is said that "when a party is sued *by a wrong name*, and the summons is left at a boarding-house, without other service, we cannot hold it to be such a service as is contemplated by the law."   Other parts of the opinion would seem to indicate that the misnomer alone would not have been fatal.   The only difference, however, between that case and this is, that here the notice was left at defendant's usual place of residence; the defendant, however, at the

time, and for a month before and after, having a temporary residence at another and distant place. And see *Inhabitants of Lanesborough* v. *New Ashford*, 5 Pick., 190; *Pilkey* v. *Gleason*, 1 Iowa, 85.

In Illinois the courts use this language: In making service by copy left at the residence, *as in a case of constructive notice by publication*, the requirement of the statute must be complied with, and this must appear affirmatively on the record. *Bogland* v. *Same*, 18 Ill., 552. And again: If the particular mode of service required by statute can in any case be dispensed with, it can only be done where the court can see that the information conveyed to the defendant was as full and beneficial as if the service had been in strict conformity to the statute. *Maker* v. *Bull*, 26 Ill., 351. Or as it is expressed in another case: To obtain jurisdiction of the person when this mode of service (by copy left) is adopted, the statute must be complied with. *Cost* v. *Rose*, 17 Ill., 277. And see to the same effect, *O'Donnell* v. *Howes*, 27 Ill., 511; *Pardon* v. *Dwire*, 23 Id., 574; *Divilbiss* v. *Whitmire*, 20 Id., 425; *Wooster* v. *Lyons*, 5 Blackf., 60; *Delano* v. *Jopling*, 2 Littell, 118. And as somewhat applicable, *Farris* v. *Powell*, 10 Iowa, 553; *Diltz* v. *Chambers*, 2 G. Greene, 479; *Hodges* v. *Same*, 6 Iowa, 78; *Dupont* v. *Downing*, Id., 172; *Tunis* v. *Withrow*, 10 Id., 305.

Leaving cases, however, we come to the consideration, more particularly of the established facts in the one before us. First, then, the plaintiff was misnamed in the original action. Her name is admitted to be Emeline, and she was sued, and served with notice as Caroline J. She was not at the time living at the house where the notice was served, though she regarded and treated it as her usual place of residence. She had no knowledge whatever of the commencement of said action. Nor was she aware of the judgment until some two years after its ren-

dition. Defendants knew all these facts before taking the property. She did not owe the amount of the judgment, and the amount actually due she offered to pay before the seizure. The plaintiff in the original action, instead of securing personal service relied upon service by copy. In doing so, a radical, cardinal mistake intervened. No copy was in fact left, such as the law requires. And of all this he had ample notice before the seizure of this property. It seems to us most just and reasonable, that, if a party relies upon such a service, he should give the defendant his or her true name. And especially so when the copy is left, as in this case, at a place, where the defendant does not, at the time, actually reside. That is to say, if John Jones shall be sued by the name of William Smith, or William Jones, at a time when he is absent from home for months, and a copy of the notice shall be left, containing the wrong name, at his residence, he ought not to be concluded by such service. By such service he is in no legal or logical sense advised that a claim is made against him. Assuming the legal supposition that at his dwelling-house there will be those enjoying his confidence, and protecting his interest, who will give him actual notice of the copy left, this supposition ought not reasonably to be extended to a case, where there is a misnomer, misleading and fatal in its character. For it must not be forgotten that if such a service is conclusive, then it would be equally so, if the two names bore no shade of resemblance to each other, the cardinal idea of appellees' theory being that it has the like force and effect for all purposes, as an actual, personal service. And yet, as we have seen, the reason for holding the defendant to plead the misnomer in abatement in the case of personal service is that he is actually advised, so that there is no room for doubt or mistake, that *he* is the very party against whom the demand is made, and the

law says if he fails to heed the commands of its process, he does so at his peril. But it is not true in fact or law that he has such notice, such warning, when the plaintiff fails to comply with the requirements of the statute in making this statutory or substituted service.

We concede that the case is not free from difficulty. In view of its facts however, from the best thought we have been able to give to it, we feel constrained to hold that the instructions complained of are erroneous. Guided by what we regard the reason and policy of the law, and confining ourselves for the present alone to the peculiar facts of this case, we think defendants were trespassers. To condense them, these facts are: the admitted material misnomer, plaintiff's temporary sojourn at another place, her entire ignorance of the pendency of said action and of the judgment, her offer to pay the amount actually due, and notice of all these facts to the defendants before the seizure. The absence of either of these elements might materially affect the strength of plaintiff's position. But their union would seem to make it next to impregnable, however assailed.

Reversed.

COLE, J., *dissenting.*—I cannot concur in the conclusion reached by the foregoing opinion. It seems to me, if, as conceded by the opinion and as fully sustained by the authorities cited and others, that at the common law, a misnomer like the one at bar, would not invalidate the judgment nor in the least affect the right of plaintiff to have execution thereon, then, it logically and inevitably follows, that since the service of the process or notice was *made strictly in the manner provided,* and substituted by statute for the common law service, that the same validity of judgment, and right to execution must exist under our statute, as at the common law. To say that the manner

of service is different under the statute from what it was at the common law does not, it seems to me, at all affect the result or consequences which follow, because the statute has expressly substituted the service provided for by it, in lieu of the manner of service provided by the common law.

The statute has provided the two methods (and others) for service, one by personally reading and delivering a copy of the notice to the defendant, the other by leaving a copy at the defendant's usual place of residence, with a member of his family, &c. Both of these methods are alike effectual and sufficient; and for a court to say that different results and rights flow from the one manner of service over the other, is, it appears to me, to infringe upon the legislative power of making law, rather than exercising the judicial power of construing law. To declare that a judgment is *void* when rendered upon the one manner of service, while it would be *valid* if rendered upon the other, is, in my opinion, without the sanction of either correct law or sound reason. And this view is still further fortified by the fact that it is not competent for a District Court to institute any inquiry as to whether the notice left with the member of the family, ever actually came to the defendant's knowledge or not. And thus we see, that the majority opinion makes the jurisdiction of the court to render the judgment depend upon a fact about which it has no right or authority to make inquiry or ascertain.

But there is a practical result attained by the majority opinion, which adds to its objectionable character, and it is this, it encourages vindictive litigation, and renders an officer of the law liable to damages for the apparent (and as I think actual and legal) discharge of his official duty, without in the least settling or affecting the rights of the real parties in interest. In my opinion the judgment

ought to be held valid. The defendant therein (the plaintiff in this action) may have the right, by showing that she has a good defense to the cause of action or a part thereof (a fact which has, as yet, in no manner been made to appear), and that by reason of her failure, without her fault, to receive any notice of the action, she was prevented from setting it up, to now come in and have a retrial of the cause upon the merits, just as a defendant, upon whom personal service has been made, may, if prevented from making his defense, without his fault (as by his sickness or otherwise), be permitted to have the cause opened and retried. By such proceeding the real merits of the controversy will be settled, and complete justice done. In my opinion the judgment of the District Court should be affirmed, but as a majority think otherwise it must be

