Wright v. Howell

Affirmed.

---

## WRIGHT v. HOWELL *et al.*

1. **Judgment:** ALTERATION OF. To establish the alteration of a confessional judgment, or the statement on which it is founded by subsequent interlineation, the evidence thereof should be unequivocal and satisfactory. The evidence to that effect in the present case was held insufficient.

2. **Fraudulent conveyance:** FORCE OF. A fraudulent conveyance is binding as against the grantor, and all persons except his creditors and *bona fide* purchasers from him.

3. —— The statutes of 13 and 27 Elizabeth are in force in this State, and it is now the settled doctrine in this country that a *bona fide* purchaser is protected under them whether he purchases from a fraudulent grantor or a fraudulent grantee.

4. —— And in this respect there is no difference between a deed to defraud subsequent creditors and one to defraud subsequent purchasers.

5. **Redemption:** BY JUDGMENT LIEN HOLDER. A judgment lien holder who is not made a party to a proceeding to foreclose a mortgage on which his judgment is a subsequent lien, is entitled to redeem from a sale under the foreclosure.

6. **Tender:** EFFECT OF. A tender is an admission that the amount tendered is due, and the party in whose favor the tender is made should have judgment therefor.

7. Judgment by confession: APPROVAL OF. If the record of a confessional judgment be signed by the judge, execution may issue thereon before and in the absence of a formal entry of approval.

8. Judicial sale: AFTER RETURN DAY. A sale under execution after return day, under a levy made during the life-time of the writ, is valid; and in the absence of any showing to the contrary it will be presumed that the levy was thus made.

THURSDAY, DECEMBER 6.

*Appeal from Polk District Court.*

PLAINTIFF recovered judgment by confession, in the Polk district court, against William F. Ayers, October 15, 1858. On the 7th day of March, 1859, David M. Ayers purchased of Ira Cook the N. ⅛ of lot 10, block 35, of the original town of Fort Des Moines, for the consideration of $800, a little more than one-half of which he then paid in property. Owing debts which he could not pay, and regarding it *safer* to vest the title in another, he caused the conveyance to be made by Cook to his father, William F. Ayers, who executed his note, secured by mortgage on the property conveyed, for the balance of the purchase-money. David M. Ayers took possession of the lot, which at the time of his purchase was vacant, and improved it. The note and mortgage were sold and assigned by Cook to Haster, who foreclosed the same in the Polk district court, without making the plaintiff a party to the foreclosure proceedings. Haster purchased the lot at the foreclosure sale in 1860. On the 12th day of December, 1860, D. M. Ayers, who was still in possession of the premises, negotiated a sale thereof for the consideration of $1,000, and Haster conveyed to the defendant, C. C. Howell. On the 9th day of November, 1861, this plaintiff purchased the lot at a sheriff's sale under his judgment, at a bid of $350. It does not appear whether he obtained a deed. After his purchase he brought an action

in the district court of Polk county to redeem from Howell. The cause was tried by the first method of trying equitable issues, and decree entered for the plaintiff. The defendants appeal. The remaining necessary facts appear in the opinion.

*S. Sibley* for the appellants.

*Withrow & Wright* for the appellee.

DAY, J. — I. The question which presents itself *in limine* is as to the validity of plaintiff's judgment, and whether it still subsists unsatisfied.

1. JUDGMENT: alteration of.

The defendant insists that the confession of judgment has been fraudulently altered, by the insertion of material matter. The testimony of William F. Ayers, by which alone the alteration is sought to be established, is as follows : " Q. When was the confession of judgment interlined ? A. I don't think that portion was interlined by my direction. I don't know that it was interlined at all. Q. State whether or not, when you confessed said judgment, in the confession, were the words, interlined, 'being for money borrowed, and interest at ten per cent'? A. I think not. Q. Now, state whether such interlineation was ever made with your knowledge or consent ? A. It was not, that I recollect of. Q. State whether you ever made affidavit to the statement or confession on which plaintiff's judgment is entered against you, with the words above given, as interlined in it ? A. I think not." This is all of his testimony in chief in regard to this subject, and, in our opinion, it is not sufficiently positive and certain to establish a charge of so grave a character as a forgery of a record. It is further claimed that the judgment has been fully discharged. The judgment is for the sum of $6,055.66, with interest at ten per cent from October 15, 1858. William F. Ayers

testifies that he has paid thereon in all $3,300. The sales of property under the judgment amounts to $640. So that, conceding the payment of $3,300, a larger sum yet remains unsatisfied.

II. The next question involves the right of plaintiff to redeem from Howell. David M. Ayers purchased the lot in controversy from Cook, for $800, and paid a little more than half the purchase price in property. He owed debts at the time which he could not pay, and considered it *safer* to place the title in William F. Ayers, his father. He caused Ira Cook to convey the lot to William F. Ayers, who accepted the title, and executed his note for nearly $400, secured by mortgage upon the lot, for the unpaid purchase-money. David M. went into possession of the lot, and made improvements. William F. Ayers paid nothing for the lot, had no interest in it, but held the title for his son. This transaction we must regard as a fraud upon the creditors of David M. It does not admit of doubt that such creditors could set the conveyance aside. This conveyance, being fraudulent, vested the absolute title to the property in William F. Ayers, as against all persons except the creditors of David M. and *bona fide* purchasers from him for a valuable consideration.

David M. could assert no claim to the property. The law furnishes him no remedy by which he can enforce any right in regard to it. It follows that all the incidents of ownership attached to the property in the hands of William F. Ayers, subject to the paramount right of the creditors of David M., and of *bona fide* purchasers for value from him. William F. could dispose of it by sale, or incumber it by mortgage, and his *bona fide* vendee or mortgagee would be protected. The statutes of 13 and 27 Eliz. are in force in this State, and constitute a part of its common law. *O'Ferrall* v. *Simplot*, 4 Iowa, 381. It is now the settled American doctrine that a *bona fide* pur-

<div style="margin-left:2em">2. FRAUDULENT CONVEYANCE: force of: subsequent purchasers.</div>

chaser for valuable consideration is protected under these statutes as adopted in this country, whether he purchases from a fraudulent grantor or a fraudulent grantee, and that there is no difference in this respect between a deed to defraud subsequent creditors and one to defraud subsequent purchasers.

They are voidable only, and not void absolutely. 4 Kent, 464.

As the lot in question vested in William F. Ayers as against all persons, except creditors of David M. or 5. REDEMPTION: purchasers *bona fide* for value, it follows by judgment lien holder. that, subject to the rights of such persons, it became liable for the debts of William F. The plaintiff's judgment was a lien from the time of its rendition, not only upon all property at the time owned by the judgment defendant, but also upon all which he subsequently acquired. Upon the conveyance to William F. Ayers of the lot in controversy, the lien of this judgment at once attached to it, subject to the paramount lien of the mortgage to secure the unpaid purchase-money, and subject to be divested at the suit of a creditor of David M., or of a *bona fide* purchaser for value from him. The plaintiff, then, had a lien upon this lot at the time the mortgage was foreclosed, and not being made a party to the foreclosure proceedings, he is not bound thereby. No creditor of David M., nor purchaser from him, has complained of William F.'s title. The lien of a judgment continues in force for the period of ten years from the date of the rendition of the judgment. Rev., § 4109. The plaintiff's lien not having been divested by any thing occurring since it attached, was in force at the time the proceedings to redeem were instituted. It is claimed that Howell is a *bona fide* purchaser, for value, from David M., prior to the time that Wright purchased under the judgment against William F., and that Howell's title is the better one, upon the principle that the *bona fide* purchaser

who is prior in point of time, whether from the fraudulent grantor or the fraudulent grantee, is better in right. This position ignores the fact that, at the time of Howell's purchase from David M., David had no interest in the lot, and could convey no right therein. The sale of the mortgaged premises to Haster, under the decree of foreclosure, on the 18th May, 1861, entirely divested every interest which David M. may have had prior to that time. Haster was a purchaser in good faith and for value. He had no notice of any secret trust or fraud existing between David M. and William F. Ayers. He is the purchaser who is first in point of time. By his purchase David M. was divested of any power to convey any right to any one. Whatever right Howell may have in the property he must derive through his conveyance from Haster, and not through his purchase from David M. Ayers.

We are referred to the case of *Kramer* v. *Rebman*, 9 Iowa, 114, as settling the doctrine that a *judgment creditor* cannot redeem after foreclosure of mortgage. The question in that case was presented upon a demurrer to a petition for foreclosure, asking that the *defendant's* equity of redemption might be barred. The court held that the demurrer was properly overruled. That was the only question presented by the record in the case. The petition could not ask, nor could the decree grant the foreclosure of the equity of redemption, of one not a party to the record. A simple creditor, having no lien at the time of the foreclosure, stands in an attitude different from one having a lien of judgment, and who is not made a party to the foreclosure proceedings. It is to the former that the language of the opinion must apply when it says that a *creditor* of the judgment defendant has no right to redeem after a sale under the foreclosure.

Without extending this opinion further, we are of opinion that the plaintiff's judgment and purchase gave

him such a lien on the mortgaged premises as entitles him to redeem from the sale under the foreclosure.

III. The commissioner to whom the cause was referred for ascertainment of amount of judgment, and value of improvements and rents, reported amount of judgment $570.08, value of improvements, $820; and amount of rents, $1,448.75, showing a balance against defendant Howell of $58.67. For this amount the district court entered judgment against Howell. This action was erroneous. Prior to the commencement of suit the plaintiff tendered defendant $400. The petition avers that this amount is brought into court for defendant. A tender is an admission that the amount tendered is due, and that the party in whose favor the tender is made is entitled to that amount. The plaintiff should have been required to pay the amount tendered. *Brayton* v. *County of Delaware*, 16 Iowa, 44.

6. TENDER: effect of.

IV. William F. Ayers died during the pendency of the suit, and his administrator, W. T. Harbert, was made a party, but he was not served with notice, and did not appear. All the interest of William F. Ayers in the property was divested by the foreclosure proceedings. He was not a necessary party. It was not error to render a final decree, without notice to his administrator. The judgment against W. T. Harbert for costs was, probably, inadvertently entered, and that against *Lorenzo* Haster is likely a clerical error.

V. It is objected that the judgment by confession is not approved. The confession was made under the Code of 1851. Process could issue for the enforcement of the judgment before its approval. Code of 1851, §§ 1578 and 1840. The signing of a record by a judge is not essential to its validity. 10 Mo. 346; *Osborn* v. *State*, 7 Ohio.

7. JUDGMENT BY CONFESSION: approval of.

The record of judgment in this case is signed by the judge, though there is no formal entry of approval. We

regard this a compliance with the requirements of sections 1577 and 1578 of the Code.

VI. It is claimed that the *venditioni exponas* issued without authority, and that the sale thereunder was unau-

**8. JUDICIAL SALE: after return day.** thorized. An execution issued December 7, 1860, and was returned April 8, 1861, the real estate levied upon, but not sold by order of plaintiff. At the August term, 1861, of the district court, a *venditioni exponas* was ordered, and, on the 22d day of October, it was issued. Under this *venditioni exponas* the sale occurred on the 7th day of December, 1861. It being shown that a levy was made, this court will not presume that the officer intrusted with the execution of the writ, in violation of his duty, levied it after the return day. We have then a case of a levy during the life of the writ, and a sale after the return day. That such a sale is proper, even without a *venditioni exponas*, has been frequently held. *Stein* v. *Chambless*, 18 Iowa, 474; *Butterfield* v. *Walsh*, 21 id. 98; *Moomey* v. *Maas*, 22 id. 386; *Phillips* v. *Dana*, 3 Scam. 551; *Wheaton* v. *Sexton*, 4 Wheat. 503. In this last case the court say: "The purchaser depends upon the judgment, the levy and the deed. All other questions are between the parties to the judgment and the marshal. Whether the marshal sells before or after the return, whether he makes a correct return, or any return at all, to the writ, is immaterial to the purchaser, provided the writ was duly issued and the levy made before the return."

The judgment against W. S. Harbert and Lorenzo Haster, for costs, is reversed, and the plaintiff will be entitled to the relief prayed upon payment of the sum tendered.

With these modifications the decree of the district court is

Affirmed.

Day, J.—Upon the petition of appellant a rehearing of this cause was granted, and it has been submitted to us upon printed abstract and additional argument.

After a careful examination of the abstract of record and the petition for rehearing, and a like consideration of the oral arguments upon which the final submission was made, a majority of the court are still content with the decision before announced.

Some of the positions assumed in the petition for rehearing have been pressed upon our attention with an earnestness and an apparent confidence in their correctness which render proper some notice in addition to what is set forth in the foregoing opinion.

It is claimed that the position assumed in the opinion that Haster was the first good-faith purchaser is untrue in fact.

It is not claimed that the *proof* introduced affects the *bona fides* of Haster's purchase, and indeed no such claim could be made, for there is no evidence tending to produce such result.

But it is insisted, first, that in the joint answer of Haster and Howell, Haster admits that his purchase was not *bona fide*.

The portions of the answer referred to are as follows: "They deny that William F. Ayres ever bought said lot, but aver that one D. M. Ayres bought said lot, and paid one-half the purchase-money down, and that the deed thereto was made to D. M. Ayres' father, William F. Ayres, who executed his mortgage on said lot to secure the unpaid part of the purchase price, and that William F. Ayres never had any other title, right or claim thereto than as a trustee of the legal title, holding the same to the use and subject to the order of the said D. M. Ayres." * * * * * * "That, by agreement between Haster and D. M. Ayres, said D. M. Ayres had the right to improve said lot, and to have the right, title and interest of said Haster,

upon payment to him of the amount of said Haster's bid therefor and ten per cent interest thereon."

We need not determine what effect these admissions might have in a question affecting the present rights of Haster. They might be very potent against him. But they were made after he ceased to have any interest in the property, and certainly cannot affect the rights of the plaintiff. They cannot have the effect of evidence against the plaintiff. The answer is not shown to be verified. And even if it were, it does not, under our present system of procedure, operate as evidence.

Again, it is urged that Haster's purchase under the foreclosure sale is not *bona fide*, and did not divest the interest of David M. Ayres, because he was in possession, and was not made a party to the foreclosure proceeding.

The conveyance from Cook to William F. Ayres, having been procured by David M. to be so made in fraud of his creditors, is, as we have seen, absolute and binding between David M. and William F. Upon this point, see the following: Story's Eq. Jur., § 371, and cases cited; *Stephens et al.* v. *The Heirs of Harrow*, 26 Iowa, 458, and cases cited in brief of Mr. Stiles therein; *Douglas* v. *Dunlap*, 10 Ohio, 162.

It may be conceded that a purchaser from William F., or at the sheriff's sale under a foreclosure of the mortgage executed by William F., David M. being in possession, would take the title subject to all the equitable rights of David M.; and, further, that if David M. was not made a party to the foreclosure proceedings his rights would not be affected thereby.

But what at this time were the equitable rights of David M.? Nothing. He had caused a conveyance for a fraudulent purpose to be made to William F. Ayres; and that, as against him, vested the title in William F. If Haster had inquired of David M. Ayres, in virtue of what right he held possession, and had ascertained the

facts, he would have learned that David M. possessed no rights which he could enforce against William F.

In *Gardner* v. *Cole et al.*, 21 Iowa, 205, it was held that the *bona fides* of a purchaser from a fraudulent grantor in possession is not affected by the constructive notice arising from the record of the fraudulent deed. The reason assigned is that notice to a purchaser of a fraudulent conveyance is simply notice of a nullity, and that if he knew of it, he at the same time knew of its invalidity. The same principle applies to the knowledge arising from the possession of David M. Ayres. The same circumstance that informed Haster of the nature of David's claim, also informed him that it was invalid as against William F., and the mortgage under which he proposed to buy. The mortgage of William F. to Cook was executed to secure part of the purchase-money, and was valid beyond question.

There is nothing in the evidence, as we have seen, affecting the *bona fides* of Haster's purchase. Although a purchaser at sheriff's sale, he stands in the same attitude as an ordinary purchaser. *Wallace* v. *Bartle*, 21 Iowa, 346, and cases cited ; *Gower* v. *Doheney*, 33 Iowa, 36.

Haster was, therefore, as stated in the foregoing opinion, the first *bona fide* purchaser, so far as his purchase affects the plaintiff. After this purchase no rights could be acquired by purchase from David M. Ayres. Whatever rights Howell possesses are derived under Haster. Haster held under William F. Ayres, against whose title the jugment of plaintiff was a lien. Howell took the property subject to the same lien, which not being cut off by foreclosure, still subsists.

We are thus led to the same conclusion before announced.

COLE, J., dissenting. — There is no dispute about the facts. Wright recovered his judgment against Wm. F.

Ayres before David M. Ayres purchased the property in controversy and had it conveyed to Wm. F., his father. Hence, Wright parted with nothing, and gave no credit on account of it. Wm. F. Ayres paid no consideration for the lot and suffered no damages or loss by reason of the title being conveyed to him. Hence, his ability to pay the judgment was not at all impaired by his holding the title. These considerations show that Wright has no possible *equity* whatever in or to the property. If he has any claim to the lot, it rests alone in the merest legal technicality.

Howell purchased the property of David M. Ayres, in good faith and for a full consideration paid. David M. Ayres claimed to be the real owner of it, but said the title was in John W. Haster, his father-in-law, who would convey at his request. Upon inquiry of Haster, it was ascertained by Howell, that he acknowledged the ownership of David M. Ayres and his willingness to convey at his request. Howell then purchased of David M. Ayres; paid the consideration in money, and received a conveyance of the lot from John W. Haster. All this, before the levy or sale to plaintiff. Now, apply the doctrine of the foregoing opinion (first above); about which there is no dispute, to wit : " It is now the settled American doctrine, that a *bona fide* purchaser for a valuable consideration is protected under these statutes (13 and 27 Eliz.), as adopted in this country, whether he purchases from a fraudulent grantor or a fraudulent grantee," and we have the true and correct conclusion, namely, that Howell, being a purchaser in good faith from the fraudulent grantor, David M. Ayres, is protected in his title.

But the foreclosure of the mortgage made by Wm. F. Ayres to Cook and assigned to Haster, and the purchase of the lot thereunder by Haster, is made " a stone of stumbling and a rock of fence " in the otherwise unobstructed pathway to the logical, legal and equitable con-

clusion, above named. It is asserted in the first opinion above, and correctly, that " David M. Ayres could assert no claim to the property. The law furnishes him no remedy by which he can enforce any right in regard to it. It follows that all the incidents of ownership attached to the property in the hands of Wm. F. Ayres, subject to the paramount rights of the creditors of David M. and of *bona fide* purchasers for value from him."

And it is just as true that although Haster may have purchased the mortgage, and at its foreclosure, the lot, with full knowledge of all the facts respecting the title, and under an agreement with David M. Ayres to convey it to him, yet David M. could assert no claim to the property as against Haster. Therefore, the *rights* of David M. Ayres were no more and no less as against Haster, his father-in-law, in any event than as against Wm. F. Ayres, his father. David M. could not *enforce* any rights against either; but yet, either might recognize his rights and accord them to him. Haster did this, and in doing it enabled David M. to sell to Howell, a good faith purchaser, for value. Whether Haster purchased the mortgage and lot, in good faith or in bad faith, cannot affect Howell's rights. *He* is a purchaser in good faith and for value, from a fraudulent grantor, and no purchaser from a fraudulent grantee is contesting his right; and as is stated in the first opinion above he " is protected " by the statutes. The majority opinion fails to award the protection which the statute guarantees.

Because my judgment, grounded upon the conceded principles of law, and my conscience, enlightened and guided by the rules and ethical principles of equity, declare to me, alike, that the conclusion reached by the foregoing opinion is violative of the one, and effectuates great injustice in the name of, though (as I think) in utter antagonism to the other, I have been constrained to prepare this dissent.