JANE CLOUD v. W. H. MALVIN *et al.,* Appellants.

**Fraudulent Conveyance:** EVIDENCE: *Consideration.* In 1878 a mother obtained title to sixty acres of land, by voluntary partition agreed to between herself and her children. She then agreed with three of the children that if they would work this land, it should be left them by her; and they did this until 1888. In 1885 a fourth child sold the mother forty acres more. The consideration was paid by two of the said three children, and the forty was conveyed to the mother to defraud creditors of the said two. Both tracts were mortgaged. In 1888 the mortgage was foreclosed. About this time an action brought by plaintiff was pending against the mother, and she deeded to one of said two all of said 100 acres. Moreover, she devised said land to said two. This will was probated after her death and said children claim title under it. When the mother made said deeds, the land was about to be sold under foreclosure, and it was agreed, after consultation with an attorney, that one of said two children should acquire deed under the foreclosure and then have title quieted. When the year of redemption had run and the deed had been taken, the action to quiet title could not be brought because of said litigation being then pending. The day before it resulted in judgment, said deeds were recorded. *Held:*

    a. That though the deed under foreclosure proved void, the transfer of the sixty acre tract was effectually accomplished without it; that the transfer rested on sufficient consideration by the working of said tract on part of the children from 1878 to 1888, and that said sixty acres is not subject to said judgment.

    b. The forty acre tract sold the mother by the fourth child, on consideration paid by the two other children, with intent to defraud creditors of these two, to whom the mother conveyed it when she conveyed the sixty acres, being a voluntary conveyance, is subject to the judgment. These two who had caused the forty acres to be conveyed to their mother with said intent, cannot be heard to say against her creditors that the land was never her property by reason of said fraud, nor that the deed to them from her was a mere reconveyance sustained by the moral obligation to restore property received by fraudulent conveyance.

**ELECTION.** *Pleading.* Though defendants qualified as executors under said will, they are not estopped to claim under said agreement or deed, they making no claim under the will in the pleadings. Besides, no election or estoppel is pleaded.

**Costs:** REVIEW ON APPEAL. Though costs are, in a suit to set aside a conveyance as fraudulent, taxed against mere lienholders, the judgment will not be reviewed where the matter was not brought to the attention of the court below.

REHEARING. An issue not raised on the original hearing will not be determined on a rehearing.

*Appeal from Delaware District Court.*—HON. J. J. TOLER-TON, Judge.

TUESDAY, MAY 24, 1898.

ON REHEARING APRIL 7, 1899.

CREDITORS' bill to subject certain lands, the title to which is in W. H. Malvin and S. S. Malvin, to the payment of a judgment held by plaintiff against Sarah Malvin. The trial court subjected certain of the lands, and denied relief as to the remainder, and both parties appeal. As the defendants first perfected their appeal, they will be called the appellants. A statement of the issues will be found in the opinion.— *Modified*

*Dunham & Norris* and *W. H. Utt* for appellants.

*Yoran & Arnold* for appellee.

DEEMER, C. J.—Samuel Malvin, Sr., died intestate January 19, 1872, seized of two hundred and twenty acres of land, and possessed of personal property to the amount of about fifteen thousand dollars. His widow, Sarah, and his son Philip S. were appointed administrators of the estate. The son undertook the active management of the property, and squandered nearly all the personal assets in speculation on the board of trade. In February of 1878 he absconded and has never since been heard from. Shortly after his departure, various creditors brought suit against him, as

well as against other heirs of the deceased; and the remaining property of the estate was levied on under writs of attachment. While these suits were pending, and on or about July 16, 1878, the heirs—11 in number—met, and made a voluntary partition of the property. By the terms of this agreement, the widow was to receive sixty acres of land, in full of her distributive share, and was to assume the payment of five hundred and seventy-three dollars and twenty-three cents of a mortgage upon the land allotted to her; Marion C. Malvin, a son, was to receive forty acres, and pay one thousand one hundred and ninety-six dollars and thirty-four cents of the mortgage, and also one hundred and twenty-six dollars and fifty-six cents to some of the other heirs; William H. and Samuel Malvin, also sons, were to jointly receive forty acres of land, and pay two hundred and eighty-six dollars to other heirs; Belle Malvin and Jane Cloud, daughters, were to jointly receive forty acres, and pay one hundred and sixty-five dollars and eighty-two cents; Elizabeth Carpenter, a daughter, was to take a town lot, and pay two hundred and eight-three dollars; and Charles Malvin and Ann Skinner, son and daughter, were to jointly receive forty acres, and pay three hundred and fourteen dollars. The other heirs were not to receive any of the real estate. At the time of this partition the mortgage to which we have referred, and which will hereafter be called the "Carpenter Mortgage," was being foreclosed; and, as it covered the lands assigned to the widow and to Marion C. Malvin, provision was made for its payment as above indicated. Payment was not made, however, and the land covered by the mortgage was sold under execution on a judgment obtained in the foreclosure proceedings. In 1886 the widow made a report as administratrix to the county court of Delaware county, in which she stated that her son Philip had squandered the estate, that she was not liable therefor, and that all the heirs, save and except the plaintiff and appellee, who is her daughter, had released her from liability. This report does not appear to

have been approved. Plaintiff did not agree to the release of her mother, but, on the contrary, brought suit against her for maladministration, and on June 10, 1892, recovered the judgment which lies at the foundation of this suit. In the year 1885 W. H. and S. S. Malvin made conveyance of the land allotted to them, to their mother. This conveyance was evidently made with intent to defraud creditors. And at a later date, but during the same year, Marion C. Malvin conveyed to his mother the land received by him. The expressed consideration for this deed was one thousand one hundred dollars. It was paid by the brothers W. H. and S. S. Malvin, and the title was placed in the mother for the purpose of defrauding creditors. In the foreclosure proceedings of which we have spoken, the presiding judge made a memorandum in his docket on or about June 1, 1878, directing the foreclosure of the mortgage; but no decree was in fact entered until the trial of this case in the court below, when one was ordered *nunc pro tunc*. An execution had issued, however, in May of the year 1888, and the land was sold, as before stated. After the sale, W. H. Malvin, one of the sons, procured an assignment of the sheriff's certificate, which ripened into a deed on the 10th day of July 1889. In July of the year 1888, Sarah Malvin executed a will in which she devised certain of the lands allotted to her to her sons, and at the same time made deeds to twenty acres of the land to her son W. H. Malvin, and twenty acres to her son S. S. Malvin; this being the same land that they conveyed to her in the year 1885. On the 10th day of June, 1892, and shortly before plaintiff obtained judgment against her mother, there were filed for record three deeds from Sarah Malvin, the widow conveying —First, twenty acres of land to S. S. Malvin; second, twenty acres to W. H. Malvin (these being the deeds that were executed in the year 1888); and, third, a deed to the same and other lands, describing all lands of which the intestate died seized, to W. H. Malvin, the consideration being stated as two thou-

sand dollars.   This action is brought to subject the lands allotted to the widow, and the forty acres deeded to her by Marion Malvin, to the payment of plaintiff's judgment.   It is alleged in the petition that these last named conveyances were made to hinder, delay, and defraud the plaintiff in the collection of her judgment.   The trial court set aside the sheriff's deed, and also declared the conveyance from Sarah Malvin to W. H. Malvin, which was recorded June 10, 1892, fraudulent and void.   It also found that certain of the land theretofore in the name of the widow was a homestead, and exempt from the lien of plaintiff's judgment.   The defendants appeal from that part of the judgment setting aside the conveyances, and subjecting the property to the payment of plaintiff's claim; and the plaintiff, from that part of the decree allowing the homestead exemption.

There is no controversy over the facts heretofore stated. The pleadings tender an issue as to the validity of the sheriff's deed, and of the conveyance to W. H. Malvin recorded June 10, 1892.   It may be conceded at the outset that the sheriff's deed is of no validity, because of various and substantial defects in the proceedings, but this does not of itself entitle the plaintiff to the relief demanded.   With this out of the way, the title still remains in W. H. Malvin, under the deed executed to him by the widow.   Plaintiff claims that this conveyance was and is fraudulent and void, and this presents the controlling question in the case.   It is agreed between all parties that the title to the sixty acres set apart for the widow shall be quieted in W. H. Malvin, and that the title to the forty acres set aside to Marion Malvin, and afterwards transferred to the widow, shall be confirmed in S. S. Malvin, unless the plaintiff has shown that the conveyances from the mother are fraudulent as claimed.   A careful examination of the record leads us to the following conclusions:

Shortly after the voluntary partition in the year 1878, it was agreed between the widow and W. H., S. S., and Belle Malvin that these children should remain at home, farm the

lands alloted to the mother and to each of them, and, in consideration of their running the farm, the mother was to leave the sixty acres allotted to her to them. These children remained at home and worked the farm pursuant to this agreement until the year 1888. At that time notice was given of the sale of the one hundred acres alloted to the widow and Marion Malvin under the Carpenter foreclosure, and the parties attempted to make a loan to save the sale. In this they were unsuccessful, because of the condition of the title. Upon consultation with an attorney, it was agreed to let the land go to sale; and W. H. Malvin was then to raise enough money to purchase the sheriff's certificate, and was also to take a deed to the land. The widow concluded at this time that she would give the land to her children, in consideration of labor performed, and the title was to be taken in W. H. Malvin in the manner above indicated. It was also agreed that, after the certificate of sale had ripened into a deed, an action to quiet title should be brought, and the land confirmed in W. H. Malvin. As this action could not be prosecuted inside of a year, the widow also made a will, in which she devised the land allotted to her to W. H. Malvin, and that acquired from Marion C. Malvin to S. S. Malvin. This will was intended for a mere temporary purpose at the time it was made. But it seems to have been probated since the death of the widow, which occurred February 13, 1894, and appellants are now claiming thereunder. In consummation of this 1888 agreement, W. H. Malvin procured an assignment of the sheriff's certificate, and finally acquired a deed to the land. The action to quiet title was not instituted, for the reason that appellee, Jane Cloud, brought suit against her mother for maladministration, and secured the judgment which lies at the foundation of this suit. While the litigation was pending which resulted in this judgment, and on the day before the judgment was obtained, the conveyance in question, covering the entire one hundred acres of land, was made. It was manifestly made in view of the expected judgment, and, unless

based upon the transactions occurring in the year 1888, it is void as to the sixty acres allotted to the widow. The sheriff's sale and deed are confessedly void, and conveyed no title to W. H. Malvin. We are constrained to believe that the widow intended in the year 1888 to convey the sixty acres allotted to her to her children, who had remained at home and cared for the property, and that the title was to be conferred upon W. H. Malvin through the sheriff's sale under the Carpenter foreclosure, and finally confirmed by action to quiet title, and that the ownership of the land was so transferred. We are also led to believe that this course was taken by advice of her attorney, and that the action to quiet the title was not brought because of the litigation commenced by appellee, Cloud. When it became apparent that appellee was about to recover judgment, the widow made the conveyance to her son W. H., in order that the judgment might not be an apparent lien upon the land. If the land in fact belonged to W. H. Malvin, or to W. H. Malvin and the other heirs who remained upon the farm, at the time the conveyance of June 10, 1892, was made, then such conveyance did not operate as a fraud upon the creditors of the widow. We think, as we have said, that these heirs in fact owned the land, and that the conveyance of June 10, 1892, was not fraudulent, in so far as it covered the sixty acres allotted to the widow.

I. Appellee's counsel contend in argument that as W. H. and S. S. Malvin have qualified as executors under the will of their mother, and have accepted the provisions thereof, this constitutes an election to take under the will, and that they cannot claim under the agreement of the year 1888, or under the deed of June 10, 1892. We are not called upon to consider this question, for the reason that no election or estoppel is pleaded. It is well settled that, if not pleaded, it cannot be considered. Moreover, the defendants in their pleadings are not making any claim under this will. If there was any election, it was to take under the con-

veyance of June 10, 1892; and, as this antedated the will, they are probably bound by that election. The conveyance from Marion C. Malvin to his mother in the year 1885 was for the purpose of defrauding creditors. W. H. and S. S. Malvin furnished the consideration therefor, and the title was taken in the name of the mother for the express purpose of defrauding the creditors of W. H. and S. S. Malvin. The mother held title until the conveyance of June, 1892, and that conveyance was made for the purpose of placing the title in the name of W. H. Malvin, so that the appellee's judgment would not be a lien thereon. It does not lie in the mouths of W. H. and S. S. Malvin to say that the conveyance to their mother was fraudulent, and that they in fact owned the land. The conveyance, as between these parties and their mother, was good, and the grantors cannot be heard to impeach it for fraud. Nor will they be permitted to say that the reconveyance in June, 1892, was to transfer the title to lands fraudulently conveyed. Treating the title as in the mother in June, 1892, the conveyance made by her of the forty acres received from Marion C. Malvin was entirely voluntary, and, as she had no other property, was fraudulent as to her creditors. The sheriff's sale of the land, as we have already seen, was void; and, as defendants make no claim to a lien upon this forty acres by reason of advancements made, it follows that it should be subjected to the payment of plaintiff's judgment.

We have not cited any authorities in support of the propositions here announced. They are all so plain as to need none in their support. See, on the last proposition, *Butler v. Nelson*, 72 Iowa, 732; *Stephens v. Harrow's Heirs*, 26 Iowa, 458; *Wright v. Howell*, 35 Iowa, 288.

Our finding that the conveyance of the sixty acres to W. H. Malvin was without fraud relieves us of the necessity of considering the plaintiff's appeal as to the homestead awarded the defendants.

Defendants complain of the judgment for costs in the lower court. It appears that they were taxed against each and all of the defendants, who included, not only those claiming title, but also certain lienholders. This matter was not brought to the attention of the trial court, and was evidently not considered by it. It is well settled that a party will not be heard in this court until his grievance has been presented to, and acted upon by, the trial court. *Allen v. Seaward,* 86 Iowa, 718; *Snell v. Railway Co.,* 88 Iowa, 442; *Cox v. Same,* 77 Iowa, 20. The parties appellants and appellee will each pay one-half of the costs of this appeal.

On plaintiff's appeal, *Affirmed.* On defendants' appeal *modified* and AFFIRMED.

SUPPLEMENTAL OPINION FRIDAY, APRIL 7, 1899.

PER CURIAM—A rehearing was granted in this case because of some doubt we entertained upon one legal proposition announced in the opinion. We found that the conveyance of the Marion forty acres to Sarah Malvin in the year 1885 was in fraud of the creditors of W. H. & S. S. Malvin, who furnished the consideration therefor, and that the conveyance by the mother in June, 1892, of this same tract was in fraud of plaintiff's rights. The point made on rehearing by appellants, and upon which our action in reopening the case was based, was that the creditors of a fraudulent grantee have no standing to complain of a reconveyance to the original grantor. We are met, however, by the objection on the part of appellee that no such issue as this was tendered on the original submission. This we find to be the case. On the first hearing, appellants rested this branch of this case solely on the claim that the conveyance to W. H. & S. S. Malvin was not fraudulent. They expressly conceded that, if the deed was fraudulent as to plaintiff, she could recover. We quote from the argument of appellants' counsel

on the original submission: "If the mother transferred the property without consideration, and solely for the purpose of putting it beyond the reach of plaintiff's judgment, then it makes no difference whether there were defects in the proceedings upon which the sheriff's deed is based, or as to the time the quitclaim was made. The conveyances would then be set aside, not because of the defects in the origin of the deeds, or in the deeds themselves, but because the plaintiff had an equitable interest in the land at the time they were made, and the attempted conveyances were consequently fraudulent." Under the circumstances, it is our duty to decline passing upon this question. We may well leave a consideration and comparison of the cases, which are in some conflict, until the issue is properly presented. We may say in this connection, without intending to announce a rule that shall be binding upon us hereafter, that the principle announced in the original opinion is not without support. See *Susong v. Williams,* 1 Heisk. 625; *Chapin v. Pease,* 10 Conn. 69; *Allison v. Hagan,* 12 Nev. 38. The original opinion is adhered to.—AFFIRMED.